Agreement exceeds the maximum rate permitted by law, any nonprincipal payment including, without limitation, fees, costs, and late charges not deemed interest by law shall be deemed to be an expense, fee, or penalty.

22. **Obligations to Third Parties.** The Loan 1 Obligors and Loan 2 Obligors acknowledge and agree that the acceptance of title to the Mortgaged Properties, Personal Property and Intangible Property by Lender or its nominee or assignee pursuant to the terms of this Agreement shall not create any obligations on the part of Lender or its nominee or assignee to third parties that have claims of any kind whatsoever against any Obligor and Lender and its nominee or assignee have not assumed and have not agreed to discharge any liabilities pertaining thereto that occurred or arose prior to the execution of this Agreement.

23. **Non-Merger.** Notwithstanding the recordation of the Conveyance Documents, if so recorded, any mortgages in favor of Lender encumbering any of the Mortgaged Properties shall remain in full force and effect. The interest of Lender and/or its nominee or assignee under all the conveyances provided for herein, shall not merge with the interest of Lender under any of the mortgages granted to Lender from any of the Loan 1 Obligors and Loan 2 Obligors on any of the Mortgaged Properties, which shall be at all times separate and distinct, and the liens created by such mortgages shall remain in full force and effect as a first lien on any of the Mortgaged Properties and Lender's security interest in the Personal Property and Intangible Property shall not be merged and shall also remain in full force and effect.

24. **Carryover of this Agreement in the Event of Bankruptcy.** The provisions contained in this Agreement, especially in **Sections 25 through 27** below are of particular applicability in the event any of the Loan 1 Obligors and Loan 2 Obligors file for relief under Title 11 of the United States Code, as amended (**"Bankruptcy Code"**), or an order of relief is granted under Bankruptcy Code. The Loan 1 Obligors and Loan 2 Obligors are entering into the provisions contained in these paragraphs in consideration of the benefits provided to each and all of them in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which they acknowledge. Loan 1 Obligors and Loan 2 Obligors further acknowledge that the terms and provisions of this Agreement shall have full force and effect in any bankruptcy proceeding pursuant to 11 U.S.C. §101, et. seq. The Loan 1 Obligors and Loan 2 Obligors agrees that the Conveyance Documents are being delivered pursuant to the terms of this Agreement and the delivery of such documents is a simultaneous exchange of value.

25. **Relief from the Automatic Stay.** The Loan 1 Obligors and Loan 2 Obligors agree that, in the event any of them file with any bankruptcy court of competent jurisdiction, or is subjected to any petition under Bankruptcy Code which results in any order of relief under Bankruptcy Code, Lender shall have automatic relief from the automatic stay under §362 of Bankruptcy Code. Loan 1 Obligors and Loan 2 Obligors will consent to a motion or stipulation for relief from the automatic stay, including but not limited to filing of certificates and pleadings indicating such consent. Counsel to such Obligor shall prepare all necessary pleadings including the Stipulation requesting relief from the automatic stay immediately after the Effective Date of the Agreement. Such relief shall include but shall not be limited to modification of the stay to implement and enforce the provisions of this Agreement, including but not limited to the transfer of ownership of any of the Mortgaged Properties through the filing of the Conveyance Documents or through a Sheriff's or Marshal's Sale pursuant to the Stipulation or by any other proceeding or action. Further, if Borrower or any Guarantor are subject to any bankruptcy

16

proceeding under 11 U.S.C. §101 et. seq. and any party, including the U.S. Trustee, files any pleading opposing the automatic relief provided by this **Section 25**, Loan 1 Obligors and Loan 2 Obligors shall support Lender's requests as contained herein by *inter alia*, filing the appropriate pleadings affirmatively stating that they support Lender.

26. **No Renewal of Exclusivity Period, Relief from Automatic Stay**. The Loan 1 Obligors and Loan 2 Obligors agree that if any of them is a debtor in a Chapter 7, 11 or 13 proceeding under Bankruptcy Code, and Bankruptcy court enters a Cash Collateral Order, or Order affecting Lender's rights to any of the Mortgaged Property, then, subject to Court approval, that Order shall provide that if Loan 1 Obligors and Loan 2 Obligors or any of them do not file a Plan within the 180-day exclusive period provided by §1121(b) of Bankruptcy Code, Lender shall, without the necessity of any additional notice to the debtor or to other creditors, any hearing or any further order of the Court, have immediate relief from stay under Bankruptcy Code §362 to implement and enforce the provisions of this Agreement, including but not limited to the transfer of title to any of the Mortgaged Property through recording of the Conveyance Documents or Sheriff's or Marshal's Sale pursuant to the Stipulation or by any other proceeding or action.

27. **Further Relief from Automatic Stay**. If Lender requests relief from the automatic stay, Loan 1 Obligors and Loan 2 Obligors shall not object to or oppose Lender obtaining immediate relief, subject to Court approval, from the automatic stay under §362 of Bankruptcy Code. Such relief shall include but shall not be limited to modification of the stay to implement and enforce the provisions of this Agreement, including but not limited to the transfer of title to any of the Mortgaged Property through recording of the Conveyance Documents or Sheriff's or Marshal's Sale pursuant to the Stipulation or by any other proceeding or action. Loan 1 Obligors and Loan 2 Obligors shall file the necessary pleadings and/or certifications to indicate consent to relief from the automatic stay. Such certifications shall indicate that such relief be provided in an expedited manner.

28. **Cross Default**. The occurrence of any Event of Default under this Agreement shall constitute an Event of Default under the Loan Documents, as a result of which Lender may exercise any and all of its rights and remedies under the Loan Documents or this Agreement, and any of its rights and remedies at law or in equity.

29. **Representations and Warranties of Loan 1 Obligors and Loan 2 Obligors**. The applicable Loan 1 Obligors and Loan 2 Obligors each represent and warrant to Lender that, as of the Effective Date, unless otherwise expressly stated to the contrary in this Agreement:

(a) Except for the Existing Defaults, no Event of Default has occurred under the Loan 1 Documents.

(b) Except for the Existing Defaults, no Event of Default has occurred under the Loan 2 Documents.

(c) Loan 1 Borrower holds good and valid title to the 1909 Mortgaged Property and the 1909 Mortgaged Property is free and clear of liens and encumbrances other than the 1909 Mortgage and the 1909 Second Mortgage.

(d)     Loan 1 Borrower holds good and valid title to 1910 Hagert and 1910 Hagert is free and clear of liens and encumbrances.

(e)     H.A and M.T. hold good and valid title to each of 1912, 1914 and 1916 Hagert Street, Philadelphia, Pennsylvania and such real properties are each free and clear of liens and encumbrances.

(f)     Alum II holds good and valid title to the Bucks County Properties and the Bucks County Properties are free and clear of liens and encumbrances except as set forth on **Schedule 29(f)** attached to this Agreement.

(g)     H.A., B.A., D.T. and M.T. own all of the limited partnership interests in Alum II, D.T. owns all of the general partnership interests in Alum II and the Partnership Agreement of Alum II dated as of June 7, 1990 delivered to Lender is a true, accurate and complete copy of the original and has not been amended, modified or supplemented since June 22, 1994.

(h)     D.T. owns 48.5% of the limited partnership interests in Venus LP and the Partnership Agreement of Venus LP dated as of December 2, 1986 delivered to Lender is a true, correct and complete copy of the original and has not been amended, modified or supplemented.

(i)     D.T. owns 49.5% of the limited partnership interests in 1421 Spruce and the Partnership Agreement of 1421 Spruce dated as of December 2, 1986 delivered to Lender is a true, correct and complete copy of the original and has not been amended, modified or supplemented.

(j)     H.A, B.A., D.T. and M.T. each own the Pledged Ownership Interests identified on **Schedule 29(j)** and the pledge agreements entered into simultaneously with the execution of this Agreement constitute a first priority lien with respect to each of the Pledged Ownership Interests and do not constitute a default or violate the terms of any document governing such Pledged Ownership Interests.

(k)     To the best of Loan 1 Obligors and Loan 2 Obligors knowledge, there is no person or entity or governmental authority whose approval is required for any of Loan 1 Obligors and Loan 2 Obligors to enter into or carry out the terms of this Agreement pursuant to the terms and provisions hereof.

(l)     There are no contracts between any Obligor and any third party relating to the Mortgaged Properties which will become binding upon Lender or its nominee or assignee by reason of the performance of this Agreement pursuant to the terms and provisions hereof.

(m)     To the best of Loan 1 Obligors and Loan 2 Obligors knowledge, there are no unpaid bills for labor, services or work performed upon any of the Mortgaged Properties, or for materials or supplies furnished or delivered to the Mortgaged Properties, which could result in a filing of mechanics', materialmen's or laborers' liens on any of the Mortgaged Properties.

(n)     All charges, expenses and other obligations payable with respect to the ownership, use, operation and occupancy of any of the Mortgaged Properties that Loan 1

Obligors and Loan 2 Obligors are or should be aware of, or any part thereof have been fully disclosed to Lender.

(o)   The Loan 1 Obligors and Loan 2 Obligors shall indemnify and hold Lender and its nominee and/or assignee harmless from any and all losses, damages, costs or expenses, including court costs and reasonable attorneys' fees incurred by Lender or its nominee or assignee as a result, directly or indirectly, of any breach of any representation, covenant or warranty contained in this Agreement.

30.   **Waivers**.  In connection with any proceedings hereunder or in connection with any of the Loan 1 Indebtedness and Loan 2 Indebtedness, including, without limitation, any action by Lender in replevin, foreclosure or other court process or in connection with any other action related to the Loan 1 Indebtedness and Loan 2 Indebtedness or the transactions contemplated hereunder, each Obligor waives:

(a)   **all errors, defects and imperfections in such proceedings;**

(b)   **all benefits under any present or future laws exempting any property, real or personal, or any part of any proceeds thereof from attachment, levy or sale under execution, or providing for any stay of execution to be issued on any judgment recovered in connection with the Loan 1 Indebtedness and Loan 2 Indebtedness or in any replevin or foreclosure proceeding, or otherwise providing for any valuation, appraisal or exemption;**

(c)   **all rights to inquisition on any real estate, which real estate may be levied upon pursuant to a judgment obtained in connection with any of the Loan 1 Indebtedness and Loan 2 Indebtedness and sold upon any writ of execution issued thereon in whole or in part, in any order desired by Lender;**

(d)   **presentment for payment, demand, notice of demand, notice of non-payment, protest and notice of protest of any of the Loan 1 Indebtedness and Loan 2 Indebtedness;**

(e)   **any requirement for bonds, security or sureties required by statute, court rule or otherwise;**

(f)   **any demand for possession of any collateral prior to commencement of any suit; and**

(g)   **any right to require or participate in the marshalling of any Borrower's assets.**

31.   **Perfection**.  During the pendency of any Bankruptcy proceeding against any of the Loan 1 Obligors or Loan 2 Obligors, if it is determined that any of the rights granted to Lender hereunder are security interests or liens, they shall be deemed perfected and fully enforceable without the necessity of the filing of any documents or commencement of proceedings otherwise required under non-bankruptcy law for the perfection or enforcement of security interests, with such perfection and enforcement being binding upon Loan 1 Obligors and Loan 2 Obligors and any subsequently appointed trustee, examiner, or receiver, either in Chapter 11 or under any

other Chapter of Bankruptcy Code, and upon other creditors of Loan 1 Obligors and Loan 2 Obligors who have extended or who may hereafter extend secured or unsecured credit to Loan 1 Obligors and Loan 2 Obligors.

32.   **Intent of Parties**.   The intent of the parties in entering into this Agreement is to effectuate the terms and conditions contained herein including the forbearances and conveyances contemplated hereby and is not an attempt to hinder, delay or defraud any creditors of Loan 1 Obligors and Loan 2 Obligors.

33.   **Additional Representations and Warranties of Loan 1 Obligors and Loan 2 Obligors**.   The Loan 1 Obligors and Loan 2 Obligors hereby represent and warrant to Lender as follows:  To the best of their knowledge and belief, they have not, and are not, engaged in any disposition of waste or discharge of waste or hazardous substances in or on any of the Mortgaged Properties or the Bucks County Properties.  To the best of the their knowledge, there has not been any use of any of the Mortgaged Properties or the Bucks County Properties and no condition exists or existed on any of the Mortgaged Properties or the Bucks County Properties, which would give rise to liability under any applicable federal, state or local environmental statutes, laws, ordinances, rules and regulations.  To the best of their knowledge, none of the Mortgaged Properties or the Bucks County Properties has ever been used for the storage or dumping of any hazardous waste or hazardous materials.  The Loan 1 Obligors and Loan 2 Obligors and their heirs, executors, administrators, successors or assigns, hereby agree to indemnify, defend and hold harmless Lender from and against any and all liabilities, claims, damages, actions, suits, losses, costs and expenses, including, without limitation, reasonable attorneys' fees and expert witness fees, whatsoever arising out of any violation of any environmental law, rule, or regulation, which violations arise prior to Lender obtaining record ownership of the any of the Mortgaged Properties or any of the Bucks County Properties.

34.   **Challenge to Enforcement**.   Loan 1 Obligors and Loan 2 Obligors acknowledge and agree that none of them has any defense, setoff, counterclaim or challenge against the payment of any sums owing under the Loan Documents, or the enforcement of any of the terms or conditions thereof.

35.   **Validity of Liens**.   The Loan 1 Obligors and Loan 2 Obligors hereby acknowledge that the liens and security interests created and evidenced by the Loan Documents are valid and existing and further acknowledge and agree that, as of the date hereof, there are no off-sets, claims or defenses to the obligations of Loan 1 Obligors and Loan 2 Obligors under the Loan Documents. The Loan 1 Obligors and Loan 2 Obligors further acknowledge that Lender, on and as of the date hereof, has fully performed all of its obligations to the Loan 1 Obligors and Loan 2 Obligors which Lender may have had or has as of the date hereof.

36.   **Waiver**.   No waiver and no modification, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and is executed by all of the parties hereto.

37.   **Invalidation**.   Should any court of competent jurisdiction ultimately determine that the transactions contemplated and performed hereby constitute a fraudulent transfer, bankruptcy preference, or for any other reason the same is held invalid or unenforceable, the parties hereto shall be returned to their original positions as if this Agreement had never been executed and

delivered, except that Lender shall be entitled to retain the benefits of all of the mortgages granted to Lender on any of the Mortgaged Properties and to the extent that any of the Mortgaged Properties have been conveyed to Lender or to a third party, Lender or its nominee or assignee shall be entitled to retain the benefits of such conveyance.

38. **Waiver of Trial by Jury**. In any litigation (whether or not arising out of or relating to the indebtedness due Lender under this Agreement or the other Loan Documents) in which Lender and the Loan 1 Obligors and Loan 2 Obligors shall be adverse parties, the Loan 1 Obligors and Loan 2 Obligors and Lender knowingly, voluntarily and intentionally waive trial by jury.

39. **Consent to Jurisdiction**. The Loan 1 Obligors and Loan 2 Obligors irrevocably agree to the exclusive jurisdiction of the federal and state courts of Pennsylvania in any and all disputes, actions or proceedings between Lender and the Loan 1 Obligors and Loan 2 Obligors whether arising hereunder or under any other Loan Documents, except as Lender may otherwise elect; and the Loan 1 Obligors and Loan 2 Obligors irrevocably agree to service of process by certified mail, return receipt requested, to the Loan 1 Obligors and Loan 2 Obligors at the notice addresses listed in this Agreement.

40. **Entire Agreement**. This Agreement and the other Loan Documents contain the entire agreement between the parties relating to the transactions contemplated hereby. No representations, warranties, or promises or shall be binding on, any of the parties, except as expressly stated in this Agreement and the Loan Documents.

41. **Additional Acts**. Each party hereto shall, from time to time, execute, acknowledge and deliver such further instruments and perform such additional acts as the other party may reasonably request to effectuate the intent of this Agreement.

42. **Burdens and Benefits**. This Agreement shall be binding upon and shall inure to the benefit of the respective legal representatives, heirs, successors and assigns of Loan 1 Obligors and Loan 2 Obligors.

43. **No Novation**. The Loan 1 Obligors and Loan 2 Obligors hereby acknowledge and agree that the execution of this Agreement by Lender is not intended nor shall it be construed as a novation of the Loan Documents. All of the terms and provisions of the Loan Documents shall continue to remain in full force and effect, except as amended hereby. By executing this Agreement, Lender does not waive any of its claims against the Loan 1 Obligors and Loan 2 Obligors under this Agreement or the other Loan Documents or any of its rights and remedies at law or in equity.

44. **Headings**. The paragraph headings of this Agreement are for convenience of reference only and shall not constitute a part of the text hereto nor alter or otherwise affect the meaning hereof.

45. **Governing Law**. This Agreement shall be construed and enforced in accordance with and governed by the laws of the Commonwealth of Pennsylvania and the laws of the United States.

46.   **Counterparts**.  This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument.

47.   **Result of Negotiation**.  Loan 1 Obligors and Loan 2 Obligors (except for D.T.) acknowledge that they have been represented by counsel in connection with the negotiation, execution, and delivery of this Agreement and that the terms and conditions of this Agreement are the result of mutual negotiation between the parties hereto.  D.T. represents that he is an attorney and that he is representing himself with respect to the negotiation of this Agreement.  Loan 1 Obligors and Loan 2 Obligors further acknowledge that they have knowingly waived their right to (a) be heard prior to the entry of a judgment and understand that, upon such entry, such judgment shall become a lien on all real property of Loan 1 Obligors and Loan 2 Obligors in the county where such judgment is entered; (b) trial by jury; and (c) certain other rights as set forth in detail herein.  Loan 1 Obligors and Loan 2 Obligors acknowledge that such waivers and consents constitute a material inducement for Lender to enter into this Agreement and, with the exception of D.T., they have been fully advised of the consequences of such provisions by their counsel.  D.T. represents that he is acting as his own counsel and that he understands that such waivers and consents constitute a material inducement for Lender to enter into this Agreement.  This Agreement shall not be construed against Lender due to the fact that Lender and its counsel drafted the Agreement.

48.   **Confession of Judgment.**  The Loan 1 Obligors and Loan 2 Obligors have each agreed to provide Lender with a new Confession of Judgment (Warrant of Attorney) clause.

(a)   The Confession of Judgment (Warrant of Attorney) clause made by Loan 1 Borrower and appearing in the Loan 1 Note shall be replaced by the following Confession of Judgment clause:

**CONFESSION OF JUDGMENT.  THIS SECTION SETS FORTH A WARRANT OF AUTHORITY FOR ANY ATTORNEY TO CONFESS JUDGMENT AGAINST BORROWER AND TO EXECUTE UPON SAID JUDGMENT BY GARNISHMENT, LEVY, OR ANY OTHER TYPE OF EXECUTION AGAINST BORROWER'S BANK ACCOUNTS OR OTHER PERSONAL PROPERTY, REAL PROPERTY, OR INTANGIBLE PROPERTY. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST BORROWER AND TO EXECUTE UPON SAID JUDGMENT AGAINST BORROWER, BORROWER KNOWINGLY, INTELLIGENTLY, VOLUNTARILY, AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS BORROWER HAS OR MAY HAVE TO NOTICE AND A PRIOR JUDICIAL PROCEEDING UNDER THE RESPECTIVE CONSTITUTION AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA TO DETERMINE BORROWER'S RIGHTS AND LIABILITIES. BORROWER FURTHER KNOWINGLY, INTELLIGENTLY, VOLUNTARILY, AND UNCONDITIONALLY ACKNOWLEDGES THAT LENDER MAY, AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT, OBTAIN A JUDGMENT AGAINST BORROWER FOR ALL SUMS DUE UNDER THIS NOTE WITHOUT THE PRIOR KNOWLEDGE OR CONSENT BY BORROWER AND WITHOUT ANY OPPORTUNITY OF BORROWER TO RAISE ANY DEFENSE, SETOFF, COUNTERCLAIM, OR OTHER CLAIM THAT BORROWER MAY HAVE. THIS KNOWING, INTELLIGENT, AND**

VOLUNTARY WAIVER APPLIES TO A JUDGMENT BEING ENTERED BY CONFESSION AGAINST BORROWER AS WELL AS TO THE EXECUTION OF THAT JUDGMENT BY GARNISHMENT, LEVY, OR ANY OTHER TYPE OF EXECUTION AGAINST BORROWER'S BANK ACCOUNTS OR OTHER PERSONAL PROPERTY, REAL PROPERTY, OR INTANGIBLE PROPERTY. UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, BORROWER IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR BORROWER IN ANY AND ALL ACTIONS AND (A) TO ENTER JUDGMENT AGAINST BORROWER FOR THE AMOUNT DUE UNDER THIS NOTE OR (B) TO SIGN FOR BORROWER AN AGREEMENT FOR ENTERING IN ANY COMPETENT COURT AN AMICABLE ACTION OR ACTIONS TO CONFESS JUDGMENT AGAINST BORROWER FOR THE AMOUNT DUE UNDER THIS NOTE; AND, IN EITHER CASE, THE AMOUNT DUE UNDER THIS NOTE SHALL INCLUDE THE UNPAID PRINCIPAL SUM, INTEREST, AND ALL SUMS OWED BY BORROWER TO LENDER PURSUANT TO THE TERMS OF THIS NOTE AND ANY OF THE OTHER LOAN DOCUMENTS, INCLUDING COSTS AND ATTORNEYS' FEES IN THE AMOUNT OF FIVE (5%) PERCENT OF THE OUTSTANDING BALANCE OF ALL OF THE AMOUNTS SET FORTH ABOVE, BUT IN NO EVENT SHALL ATTORNEY'S FEES BE LESS THAN $5,000.00. BORROWER AGREES THAT SUCH ATTORNEYS' FEES OR COMMISSIONS ARE REASONABLE. UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, BORROWER FURTHER IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER AND IN FAVOR OF LENDER IN AN ACTION OF REPLEVIN OR ANY OTHER ACTION TO RECOVER POSSESSION OF ANY OF THE COLLATERAL OR TO SIGN AN AMICABLE ACTION OR ACTIONS TO CONFESS JUDGMENT AGAINST BORROWER IN AN ACTION FOR REPLEVIN OR IN ANY OTHER ACTION TO RECOVER POSSESSION OF ANY OF THE COLLATERAL. ALL CONFESSIONS OF JUDGMENT OR AMICABLE ACTIONS SET FORTH IN THIS SECTION SHALL BE WITH RELEASE OF PROCEDURAL ERRORS, WAIVERS OF APPEALS, AND WITHOUT STAY OF EXECUTION; AND BORROWER WAIVES ALL RELIEF FROM ANY AND ALL APPRAISEMENT OR EXEMPTION OR ACTION WHEREIN JUDGMENT IS TO BE CONFESSED. IF A COPY OF THIS NOTE, VERIFIED BY AN OFFICIAL OR AN OFFICER OF LENDER, SHALL BE FILED IN ANY PROCEEDING OR ACTION WHEREIN JUDGMENT IS TO BE CONFESSED, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL OF THIS NOTE AND SUCH VERIFIED COPY SHALL BE SUFFICIENT WARRANT FOR ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER AS PROVIDED IN THIS NOTE. JUDGMENT MAY BE CONFESSED FROM TIME TO TIME UNDER THE AFORESAID POWERS AND NO SINGLE EXERCISE OF THE AFORESAID POWERS TO CONFESS JUDGMENT, OR A SERIES OF JUDGMENTS, SHALL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, AVOIDABLE, OR VOID, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND IT MAY BE EXERCISED FROM TIME TO TIME AS, AFTER, AND AS LENDER SHALL ELECT UNTIL SUCH TIME AS LENDER SHALL HAVE RECEIVED PAYMENT IN FULL OF ALL SUMS DUE UNDER THIS NOTE AND UNDER THE OTHER LOAN

DOCUMENTS, TOGETHER WITH INTEREST, COSTS, AND FEES. NOTWITHSTANDING ANYTHING SET FORTH IN THIS NOTE, THE BORROWER DOES NOT WAIVE THE RIGHT TO FILE A PETITION TO OPEN OR STRIKE ANY JUDGMENT NOR DOES THE UNDERSIGNED WAIVE THE RIGHT TO FILE FOR A STAY OF ANY SUCH JUDGMENT. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, IF BORROWER PAYS ALL AMOUNTS DUE UNDER THE LOAN, INCLUDING ALL PRINCIPAL, ACCRUED INTEREST AND ALL OTHER SUMS PRIOR TO THE FILING OF A WRIT OF EXECUTION OR PRIOR TO LENDER EXECUTING UPON ANY CONFESSED JUDGMENT ENTERED AGAINST BORROWER PURSUANT TO THIS NOTE, BORROWER WILL NOT BE OBLIGATED TO PAY THE 5% ATTORNEY COMMISSION REQUIRED UNDER SUCH WARRANT OF ATTORNEY BUT ONLY THOSE ATTORNEYS' FEES REASONABLY INCURRED BY LENDER IN THE ENFORCEMENT OF ITS RIGHTS UNDER ANY OF THE LOAN DOCUMENTS.

        (b)    The Confession of Judgment (Warrant of Attorney) clause made by Loan 2 Borrower and appearing in the Loan 2 Note shall be replaced by the following Confession of Judgment clause:

<u>CONFESSION OF JUDGMENT</u>. THIS SECTION SETS FORTH A WARRANT OF AUTHORITY FOR ANY ATTORNEY TO CONFESS JUDGMENT AGAINST BORROWER AND TO EXECUTE UPON SAID JUDGMENT BY GARNISHMENT, LEVY, OR ANY OTHER TYPE OF EXECUTION AGAINST BORROWER'S BANK ACCOUNTS OR OTHER PERSONAL PROPERTY, REAL PROPERTY, OR INTANGIBLE PROPERTY. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST BORROWER AND TO EXECUTE UPON SAID JUDGMENT AGAINST BORROWER, BORROWER KNOWINGLY, INTELLIGENTLY, VOLUNTARILY, AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS BORROWER HAS OR MAY HAVE TO NOTICE AND A PRIOR JUDICIAL PROCEEDING UNDER THE RESPECTIVE CONSTITUTION AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA TO DETERMINE BORROWER'S RIGHTS AND LIABILITIES. BORROWER FURTHER KNOWINGLY, INTELLIGENTLY, VOLUNTARILY, AND UNCONDITIONALLY ACKNOWLEDGES THAT LENDER MAY, AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT, OBTAIN A JUDGMENT AGAINST BORROWER FOR ALL SUMS DUE UNDER THIS NOTE WITHOUT THE PRIOR KNOWLEDGE OR CONSENT BY BORROWER AND WITHOUT ANY OPPORTUNITY OF BORROWER TO RAISE ANY DEFENSE, SETOFF, COUNTERCLAIM, OR OTHER CLAIM THAT BORROWER MAY HAVE. THIS KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER APPLIES TO A JUDGMENT BEING ENTERED BY CONFESSION AGAINST BORROWER AS WELL AS TO THE EXECUTION OF THAT JUDGMENT BY GARNISHMENT, LEVY, OR ANY OTHER TYPE OF EXECUTION AGAINST BORROWER'S BANK ACCOUNTS OR OTHER PERSONAL PROPERTY, REAL PROPERTY, OR INTANGIBLE PROPERTY. UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, BORROWER IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY

913808-10

COURT OF RECORD TO APPEAR FOR BORROWER IN ANY AND ALL ACTIONS AND (A) TO ENTER JUDGMENT AGAINST BORROWER FOR THE AMOUNT DUE UNDER THIS NOTE OR (B) TO SIGN FOR BORROWER AN AGREEMENT FOR ENTERING IN ANY COMPETENT COURT AN AMICABLE ACTION OR ACTIONS TO CONFESS JUDGMENT AGAINST BORROWER FOR THE AMOUNT DUE UNDER THIS NOTE; AND, IN EITHER CASE, THE AMOUNT DUE UNDER THIS NOTE SHALL INCLUDE THE UNPAID PRINCIPAL SUM, INTEREST, AND ALL SUMS OWED BY BORROWER TO LENDER PURSUANT TO THE TERMS OF THIS NOTE AND ANY OF THE OTHER LOAN DOCUMENTS, INCLUDING COSTS AND ATTORNEYS' FEES IN THE AMOUNT OF FIVE (5%) PERCENT OF THE OUTSTANDING BALANCE OF ALL OF THE AMOUNTS SET FORTH ABOVE, BUT IN NO EVENT SHALL ATTORNEY'S FEES BE LESS THAN $5,000.00. BORROWER AGREES THAT SUCH ATTORNEYS' FEES OR COMMISSIONS ARE REASONABLE. UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, BORROWER FURTHER IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER AND IN FAVOR OF LENDER IN AN ACTION OF REPLEVIN OR ANY OTHER ACTION TO RECOVER POSSESSION OF ANY OF THE COLLATERAL OR TO SIGN AN AMICABLE ACTION OR ACTIONS TO CONFESS JUDGMENT AGAINST BORROWER IN AN ACTION FOR REPLEVIN OR IN ANY OTHER ACTION TO RECOVER POSSESSION OF ANY OF THE COLLATERAL. ALL CONFESSIONS OF JUDGMENT OR AMICABLE ACTIONS SET FORTH IN THIS SECTION SHALL BE WITH RELEASE OF PROCEDURAL ERRORS, WAIVERS OF APPEALS, AND WITHOUT STAY OF EXECUTION; AND BORROWER WAIVES ALL RELIEF FROM ANY AND ALL APPRAISEMENT OR EXEMPTION OR ACTION WHEREIN JUDGMENT IS TO BE CONFESSED. IF A COPY OF THIS NOTE, VERIFIED BY AN OFFICIAL OR AN OFFICER OF LENDER, SHALL BE FILED IN ANY PROCEEDING OR ACTION WHEREIN JUDGMENT IS TO BE CONFESSED, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL OF THIS NOTE AND SUCH VERIFIED COPY SHALL BE SUFFICIENT WARRANT FOR ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER AS PROVIDED IN THIS NOTE. JUDGMENT MAY BE CONFESSED FROM TIME TO TIME UNDER THE AFORESAID POWERS AND NO SINGLE EXERCISE OF THE AFORESAID POWERS TO CONFESS JUDGMENT, OR A SERIES OF JUDGMENTS, SHALL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, AVOIDABLE, OR VOID, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND IT MAY BE EXERCISED FROM TIME TO TIME AS, AFTER, AND AS LENDER SHALL ELECT UNTIL SUCH TIME AS LENDER SHALL HAVE RECEIVED PAYMENT IN FULL OF ALL SUMS DUE UNDER THIS NOTE AND UNDER THE OTHER LOAN DOCUMENTS, TOGETHER WITH INTEREST, COSTS, AND FEES. NOTWITHSTANDING ANYTHING SET FORTH IN THIS NOTE, THE BORROWER DOES NOT WAIVE THE RIGHT TO FILE A PETITION TO OPEN OR STRIKE ANY JUDGMENT NOR DOES THE UNDERSIGNED WAIVE THE RIGHT TO FILE FOR A STAY OF ANY SUCH JUDGMENT. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, IF BORROWER PAYS ALL AMOUNTS DUE UNDER THE LOAN,

913808-10

INCLUDING ALL PRINCIPAL, ACCRUED INTEREST AND ALL OTHER SUMS PRIOR TO THE FILING OF A WRIT OF EXECUTION OR PRIOR TO LENDER EXECUTING UPON ANY CONFESSED JUDGMENT ENTERED AGAINST BORROWER PURSUANT TO THIS NOTE, BORROWER WILL NOT BE OBLIGATED TO PAY THE 5% ATTORNEY COMMISSION REQUIRED UNDER SUCH WARRANT OF ATTORNEY BUT ONLY THOSE ATTORNEYS' FEES REASONABLY INCURRED BY LENDER IN THE ENFORCEMENT OF ITS RIGHTS UNDER ANY OF THE LOAN DOCUMENTS.

(c)    The Confession of Judgment (Warrant of Attorney) clause appearing in the Loan 1 Guaranty Agreement made by H.A. shall be replaced by the following Confession of Judgment clause:

UPON THE OCCURRENCE OF AN EVENT OF DEFAULT (AS DEFINED IN THE LOAN AGREEMENT), GUARANTOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR FOR GUARANTOR IN ANY SUCH COURT IN AN APPROPRIATE ACTION THERE OR ELSEWHERE BROUGHT OR TO BE BROUGHT AGAINST GUARANTOR AT THE SUIT OF LENDER ON THIS GUARANTY, WITH OR WITHOUT SUIT OR DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR AN AMOUNT EQUAL TO THE OBLIGATIONS DUE HEREUNDER, UNDER THE LOAN AGREEMENT AND UNDER THE OTHER LOAN DOCUMENTS (WITH OR WITHOUT ACCELERATION OF MATURITY), PLUS ATTORNEYS' FEES IN THE AMOUNT OF FIVE PERCENT (5%) OF THE OBLIGATIONS THEN DUE HEREUNDER BUT IN NO EVENT LESS THAN $5,000, WHICH LENDER AND GUARANTOR AGREE IS REASONABLE.  GUARANTOR EXPRESSLY AUTHORIZES THE ENTRY OF REPEATED JUDGMENTS UNDER THIS PARAGRAPH NOTWITHSTANDING ANY PRIOR ENTRY OF JUDGMENT IN THE SAME OR ANY OTHER COURT FOR THE SAME OBLIGATION OR PART THEREOF.

GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS GUARANTY AND THAT GUARANTOR UNDERSTANDS THE FOREGOING PROVISION FOR CONFESSION OF JUDGMENT.  GUARANTOR REPRESENTS TO LENDER THAT GUARANTOR'S COUNSEL HAS EXPLAINED THE PROVISIONS OF THIS CONFESSION OF JUDGMENT TO GUARANTOR.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR WAIVES ANY RIGHT TO NOTICE OR A HEARING WHICH GUARANTOR MIGHT OTHERWISE HAVE BEFORE ENTRY OF JUDGMENT.

(d)    The Confession of Judgment (Warrant of Attorney) clause appearing in the Loan 2 Guaranty Agreement made by H.A. shall be replaced by the following Confession of Judgment clause:

UPON THE OCCURRENCE OF AN EVENT OF DEFAULT (AS DEFINED IN THE LOAN AGREEMENT), GUARANTOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF ANY

913808-10

COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR FOR GUARANTOR IN ANY SUCH COURT IN AN APPROPRIATE ACTION THERE OR ELSEWHERE BROUGHT OR TO BE BROUGHT AGAINST GUARANTOR AT THE SUIT OF LENDER ON THIS GUARANTY, WITH OR WITHOUT SUIT OR DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR AN AMOUNT EQUAL TO THE OBLIGATIONS DUE HEREUNDER, UNDER THE LOAN AGREEMENT AND UNDER THE OTHER LOAN DOCUMENTS (WITH OR WITHOUT ACCELERATION OF MATURITY), PLUS ATTORNEYS' FEES IN THE AMOUNT OF FIVE PERCENT (5%) OF THE OBLIGATIONS THEN DUE HEREUNDER BUT IN NO EVENT LESS THAN $5,000, WHICH LENDER AND GUARANTOR AGREE IS REASONABLE.  GUARANTOR EXPRESSLY AUTHORIZES THE ENTRY OF REPEATED JUDGMENTS UNDER THIS PARAGRAPH NOTWITHSTANDING ANY PRIOR ENTRY OF JUDGMENT IN THE SAME OR ANY OTHER COURT FOR THE SAME OBLIGATION OR PART THEREOF.

GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS GUARANTY AND THAT GUARANTOR UNDERSTANDS THE FOREGOING PROVISION FOR CONFESSION OF JUDGMENT.  GUARANTOR REPRESENTS TO LENDER THAT GUARANTOR'S COUNSEL HAS EXPLAINED THE PROVISIONS OF THIS CONFESSION OF JUDGMENT TO GUARANTOR.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR WAIVES ANY RIGHT TO NOTICE OR A HEARING WHICH GUARANTOR MIGHT OTHERWISE HAVE BEFORE ENTRY OF JUDGMENT.

e)    The Confession of Judgment (Warrant of Attorney) clause appearing in the Loan 1 Guaranty Agreement made by B.A. shall be replaced by the following Confession of Judgment clause:

CONFESSION OF JUDGMENT.  UPON THE OCCURRENCE OF AN EVENT OF DEFAULT (AS DEFINED IN THE LOAN AGREEMENT), GUARANTOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR FOR GUARANTOR IN ANY SUCH COURT IN AN APPROPRIATE ACTION THERE OR ELSEWHERE BROUGHT OR TO BE BROUGHT AGAINST GUARANTOR AT THE SUIT OF LENDER ON THIS GUARANTY, WITH OR WITHOUT SUIT OR DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR A MAXIMUM SUM OF ONE MILLION DOLLARS ($1,000,000.00) DUE HEREUNDER AND UNDER THE LOAN AGREEMENT AND UNDER THE OTHER LOAN DOCUMENTS (WITH OR WITHOUT ACCELERATION OF MATURITY). GUARANTOR EXPRESSLY AUTHORIZES THE ENTRY OF REPEATED JUDGMENTS UNDER THIS PARAGRAPH NOTWITHSTANDING ANY PRIOR ENTRY OF JUDGMENT IN THE SAME OR ANY OTHER COURT FOR THE SAME OBLIGATION OR PART THEREOF.

27

913808-10

GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS GUARANTY AND THAT GUARANTOR UNDERSTANDS THE FOREGOING PROVISION FOR CONFESSION OF JUDGMENT. GUARANTOR REPRESENTS TO LENDER THAT GUARANTOR'S COUNSEL HAS EXPLAINED THE PROVISIONS OF THIS CONFESSION OF JUDGMENT TO GUARANTOR. TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR WAIVES ANY RIGHT TO NOTICE OR A HEARING WHICH GUARANTOR MIGHT OTHERWISE HAVE BEFORE ENTRY OF JUDGMENT.

(e)     The Confession of Judgment (Warrant of Attorney) clause appearing in the Loan 1 Guaranty Agreement made by D.T. shall be replaced by the following Confession of Judgment clause:

CONFESSION OF JUDGMENT.  UPON THE OCCURRENCE OF AN EVENT OF DEFAULT (AS DEFINED IN THE LOAN AGREEMENT), GUARANTOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR FOR GUARANTOR IN ANY SUCH COURT IN AN APPROPRIATE ACTION THERE OR ELSEWHERE BROUGHT OR TO BE BROUGHT AGAINST GUARANTOR AT THE SUIT OF LENDER ON THIS GUARANTY, WITH OR WITHOUT SUIT OR DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR A MAXIMUM SUM OF ONE MILLION DOLLARS ($1,000,000.00)  DUE HEREUNDER AND UNDER THE LOAN AGREEMENT AND UNDER THE OTHER LOAN DOCUMENTS (WITH OR WITHOUT ACCELERATION OF MATURITY). GUARANTOR EXPRESSLY AUTHORIZES THE ENTRY OF REPEATED JUDGMENTS UNDER THIS PARAGRAPH NOTWITHSTANDING ANY PRIOR ENTRY OF JUDGMENT IN THE SAME OR ANY OTHER COURT FOR THE SAME OBLIGATION OR PART THEREOF.

GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS GUARANTY AND THAT GUARANTOR UNDERSTANDS THE FOREGOING PROVISION FOR CONFESSION OF JUDGMENT. GUARANTOR REPRESENTS TO LENDER THAT GUARANTOR'S COUNSEL HAS EXPLAINED THE PROVISIONS OF THIS CONFESSION OF JUDGMENT TO GUARANTOR. TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR WAIVES ANY RIGHT TO NOTICE OR A HEARING WHICH GUARANTOR MIGHT OTHERWISE HAVE BEFORE ENTRY OF JUDGMENT.

(f)     The Confession of Judgment (Warrant of Attorney) clause appearing in the Loan 1 Guaranty Agreement made by M.T. shall be replaced by the following Confession of Judgment clause:

CONFESSION OF JUDGMENT. UPON THE OCCURRENCE OF AN EVENT OF DEFAULT (AS DEFINED IN THE LOAN AGREEMENT), GUARANTOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE

PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR FOR GUARANTOR IN ANY SUCH COURT IN AN APPROPRIATE ACTION THERE OR ELSEWHERE BROUGHT OR TO BE BROUGHT AGAINST GUARANTOR AT THE SUIT OF LENDER ON THIS GUARANTY, WITH OR WITHOUT SUIT OR DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR AN AMOUNT EQUAL TO THE OBLIGATIONS DUE HEREUNDER, UNDER THE LOAN AGREEMENT AND UNDER THE OTHER LOAN DOCUMENTS (WITH OR WITHOUT ACCELERATION OF MATURITY), PLUS ATTORNEYS' FEES IN THE AMOUNT OF FIVE PERCENT (5%) OF THE OBLIGATIONS THEN DUE HEREUNDER BUT IN NO EVENT LESS THAN $5,000, WHICH LENDER AND GUARANTOR AGREE IS REASONABLE. GUARANTOR EXPRESSLY AUTHORIZES THE ENTRY OF REPEATED JUDGMENTS UNDER THIS PARAGRAPH NOTWITHSTANDING ANY PRIOR ENTRY OF JUDGMENT IN THE SAME OR ANY OTHER COURT FOR THE SAME OBLIGATION OR PART THEREOF.

GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS GUARANTY AND THAT GUARANTOR UNDERSTANDS THE FOREGOING PROVISION FOR CONFESSION OF JUDGMENT. GUARANTOR REPRESENTS TO LENDER THAT GUARANTOR'S COUNSEL HAS EXPLAINED THE PROVISIONS OF THIS CONFESSION OF JUDGMENT TO GUARANTOR. TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR WAIVES ANY RIGHT TO NOTICE OR A HEARING WHICH GUARANTOR MIGHT OTHERWISE HAVE BEFORE ENTRY OF JUDGMENT.

    (g)    The Confession of Judgment (Warrant of Attorney) clause appearing in the Loan 2 Guaranty Agreement made by M.T. shall be replaced by the following Confession of Judgment clause:

CONFESSION OF JUDGMENT. UPON THE OCCURRENCE OF AN EVENT OF DEFAULT (AS DEFINED IN THE LOAN AGREEMENT), GUARANTOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR FOR GUARANTOR IN ANY SUCH COURT IN AN APPROPRIATE ACTION THERE OR ELSEWHERE BROUGHT OR TO BE BROUGHT AGAINST GUARANTOR AT THE SUIT OF LENDER ON THIS GUARANTY, WITH OR WITHOUT SUIT OR DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR AN AMOUNT EQUAL TO THE OBLIGATIONS DUE HEREUNDER, UNDER THE LOAN AGREEMENT AND UNDER THE OTHER LOAN DOCUMENTS (WITH OR WITHOUT ACCELERATION OF MATURITY), PLUS ATTORNEYS' FEES IN THE AMOUNT OF FIVE PERCENT (5%) OF THE OBLIGATIONS THEN DUE HEREUNDER BUT IN NO EVENT LESS THAN $5,000, WHICH LENDER AND GUARANTOR AGREE IS REASONABLE. GUARANTOR EXPRESSLY AUTHORIZES THE ENTRY OF REPEATED JUDGMENTS UNDER THIS PARAGRAPH

913808-10

NOTWITHSTANDING ANY PRIOR ENTRY OF JUDGMENT IN THE SAME OR ANY OTHER COURT FOR THE SAME OBLIGATION OR PART THEREOF.

GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS GUARANTY AND THAT GUARANTOR UNDERSTANDS THE FOREGOING PROVISION FOR CONFESSION OF JUDGMENT. GUARANTOR REPRESENTS TO LENDER THAT GUARANTOR'S COUNSEL HAS EXPLAINED THE PROVISIONS OF THIS CONFESSION OF JUDGMENT TO GUARANTOR. TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR WAIVES ANY RIGHT TO NOTICE OR A HEARING WHICH GUARANTOR MIGHT OTHERWISE HAVE BEFORE ENTRY OF JUDGMENT.

(h)     The Confession of Judgment (Warrant of Attorney) clause appearing in the Loan 1 Guaranty Agreement made by City shall be replaced by the following Confession of Judgment clause:

CONFESSION OF JUDGMENT.  UPON THE OCCURRENCE OF AN EVENT OF DEFAULT (AS DEFINED IN THE LOAN AGREEMENT), GUARANTOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR FOR GUARANTOR IN ANY SUCH COURT IN AN APPROPRIATE ACTION THERE OR ELSEWHERE BROUGHT OR TO BE BROUGHT AGAINST GUARANTOR AT THE SUIT OF LENDER ON THIS GUARANTY, WITH OR WITHOUT SUIT OR DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR AN AMOUNT EQUAL TO THE OBLIGATIONS DUE HEREUNDER, UNDER THE LOAN AGREEMENT AND UNDER THE OTHER LOAN DOCUMENTS (WITH OR WITHOUT ACCELERATION OF MATURITY), PLUS ATTORNEYS' FEES IN THE AMOUNT OF FIVE PERCENT (5%) OF THE OBLIGATIONS THEN DUE HEREUNDER BUT IN NO EVENT LESS THAN $5,000, WHICH LENDER AND GUARANTOR AGREE IS REASONABLE. GUARANTOR EXPRESSLY AUTHORIZES THE ENTRY OF REPEATED JUDGMENTS UNDER THIS PARAGRAPH NOTWITHSTANDING ANY PRIOR ENTRY OF JUDGMENT IN THE SAME OR ANY OTHER COURT FOR THE SAME OBLIGATION OR PART THEREOF.

GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS GUARANTY AND THAT GUARANTOR UNDERSTANDS THE FOREGOING PROVISION FOR CONFESSION OF JUDGMENT. GUARANTOR REPRESENTS TO LENDER THAT GUARANTOR'S COUNSEL HAS EXPLAINED THE PROVISIONS OF THIS CONFESSION OF JUDGMENT TO GUARANTOR. TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR WAIVES ANY RIGHT TO NOTICE OR A HEARING WHICH GUARANTOR MIGHT OTHERWISE HAVE BEFORE ENTRY OF JUDGMENT.

913808-10

**IN WITNESS WHEREOF,** Lender and the Loan 1 Obligors and Loan 2 Obligors have entered into this Agreement as of the Effective Date.

**LENDER:**                              **FOX CHASE BANK**

By: _____
Name:
Title:

**BORROWERS:**

_____
HENRY ABRAMS

**CITY ALUMINUM COMPANY, INC.**

By: _____
Name: Mindy A twer
Title:

_____
HOWARD ABRAMS

**GUARANTORS:**

_____
BETH ANNE ABRAMS

_____
DAVID TWER

_____
MINDY TWER

913808-10

**IN WITNESS WHEREOF,** Lender and the Loan 1 Obligors and Loan 2 Obligors have entered into this Agreement as of the Effective Date.

LENDER:                              **FOX CHASE BANK**

By: _____
Name: Brett V. Long
Title: Sr Vice President

BORROWERS:
                                     _____
                                     **HENRY ABRAMS**

                                     **CITY ALUMINUM COMPANY, INC.**

                                     By: _____
                                     Name:
                                     Title:

GUARANTORS:
                                     _____
                                     **HOWARD ABRAMS**

                                     _____
                                     **BETH ANNE ABRAMS**

                                     _____
                                     **DAVID TWER**

                                     _____
                                     **MINDY TWER**

**COMMONWEALTH OF PENNSYLVANIA** :

                                        SS.

**COUNTY OF** Montgomery :

On this, the 30 day of November 2010, before me, a Notary Public, personally appeared Brett V Lang, who acknowledged himself/herself to be the SVP of FOX CHASE BANK and that he/she as such officer, being so authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the bank himself/herself as such officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARGARET A. PUGH, Notary Public
Plymouth Twp., Montgomery County
My Commission Expires March 25, 2013

Notary Public
My commission expires:

**COMMONWEALTH OF PENNSYLVANIA**     :

                                      SS.

**COUNTY OF** *Philidelphia*              :

On this, the *30th* day of November 2010, before me, a Notary Public, personally appeared HENRY ABRAMS, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and he acknowledged that he executed the same for the purposes therein contained.

       IN WITNESS WHEREOF, I hereunto set my hand and official seal.

*Jill H. Spalding*

Notary Public
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JILL H. SPALDING, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 7, 2013

COMMONWEALTH OF PENNSYLVANIA    :

                                 .SS.

COUNTY OF *Philadelphia*        :

On this, the *30th* day of November 2010, before me, a Notary Public, personally appeared HOWARD ABRAMS, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and he acknowledged that he executed the same for the purposes therein contained.

        IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                    *Jill H. Spalding*

                                  Notary Public

                                  My commission expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JILL H. SPALDING, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 7, 2013

COMMONWEALTH OF PENNSYLVANIA           :

                                                            SS.
COUNTY OF *Philadelphia*                         :

On this, the 30th day of November 2010, before me, a Notary Public, personally appeared BETH ANNE ABRAMS, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and she acknowledged that she executed the same for the purposes therein contained.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JILL H. SPALDING, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 7, 2013

**COMMONWEALTH OF PENNSYLVANIA**     :

                                     SS.

**COUNTY OF** *Philadelphia*          :

On this, the _30th_ day of November 2010, before me, a Notary Public, personally appeared MINDY TWER, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and he acknowledged that he executed the same for the purposes therein contained.

        IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Jill H. Spalding_

Notary Public
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JILL H. SPALDING, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 7, 2013

COMMONWEALTH OF PENNSYLVANIA          :

                                      SS.

COUNTY OF *Philadelphia*              :

On this, the _30th_ day of November 2010, before me, a Notary Public, personally appeared DAVID TWER, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and he acknowledged that he executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                        *Jill H. Spalding*
                                        Notary Public
                                        My commission expires:

COMMONWEALTH OF PENNSYLVANIA          :

                                      SS.

COUNTY OF *Philadelphia*              :

```
COMMONWEALTH OF PENNSYLVANIA
       NOTARIAL SEAL
JILL H. SPALDING, Notary Public
 City of Philadelphia, Phila. County
My Commission Expires October 7, 2013
```

    On this, the _30th_ day of November 2010, before me, a Notary Public, personally appeared _Mindy Twer_, who acknowledged himself/herself to be the _President_ of CITY ALUMINUM COMPANY, INC., a Pennsylvania corporation and that he/she, being authorized to do so, executed the foregoing instrument for the purposes therein contained on behalf of said Corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                        *Jill H. Spalding*
                                        Notary Public
                                        My commission expires:

```
COMMONWEALTH OF PENNSYLVANIA
       NOTARIAL SEAL
JILL H. SPALDING, Notary Public
 City of Philadelphia, Phila. County
My Commission Expires October 7, 2013
```

## SCHEDULE I

## EXISTING DEFAULTS

1.     Failure by Loan 1 Borrower to make the September, 2010 and October, 2010  monthly payments of principal and interest due under Loan 1.

2.     Failure by Loan 2 Borrower to pay Loan 2 in full on or before the maturity date of June 30, 2010.

3.     Material adverse change in the financial condition of any of the Loan 1 Obligors or the Loan 2 Obligors.

4.     Failure by Loan 1 Borrower and City to operate in the 1909 Mortgaged Property.

5.     Condemnation of the 1909 Mortgaged Property, to the extent that the requirement by a governmental authority to demolish the building constitutes a constructive condemnation of the 1909 Mortgaged Property.

6.     Lender deems itself or the collateral secured by Loan 1 or Loan 2 to be insecure.

7.     Failure to maintain the 1909 Mortgaged Property in good order and condition as required by Section 6.10 of the Loan 1 Loan Agreement.

8.     Failure to comply with the reporting requirements set forth in Sections 6.4, 6.5 and 6.6 of the Loan 1 Loan Agreement.

9.     Failure by Loan 1 Borrower and City to meet the debt service coverage ratio set forth in Section 6.13 of the Loan 1 Loan Agreement.

10.     Failure by City to meet the leverage ratio set forth in Section 6.14 of the Loan 1 Loan Agreement.

11.     Failure by Borrower and City to maintain the books and records as required by Section 6.15 of both the Loan 1 Loan Agreement and the Loan 2 Loan Agreement.

12.     Any change in the general character of the business of Loan 1 Borrower or City, as prohibited by Section 7.4 of both the Loan 1 Loan Agreement and the Loan 2 Loan Agreement.

13.     Any failure by Loan 1 Obligors or Loan 2 Obligors to remain solvent or pay their debts as they become due.

913808-10

**EXHIBIT "A"**

FORM OF DEED IN LIEU OF FORECLOSURE



# *DEED*

***THIS INDENTURE*** made the _____ day of _____, in the year of our Lord Two Thousand and Ten (2010)

***BETWEEN***

**HENRY ABRAMS,** an individual, with an address at _____ (hereinafter called the Grantor) of the one part and

**FOX CHASE BANK** (hereinafter called the Grantee), with an address at 4390 Davisville Road, Hatboro, PA 19040-2544, of the other part,

***WITNESSETH*** That the said Grantor, for and in consideration of the sum of One ($1.00) Dollar lawful money of the United States of America, unto it well and truly paid by the Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, alienated, enfeoffed, released and confirmed, and by these presents does grant, bargain, sell, alien, enfeoff, release and confirm unto the said Grantee, its successors and assigns, all that certain real estate as is more fully described in Exhibit "A" attached hereto and made a part hereof situate in Philadelphia County, Pennsylvania.

***THIS DEED*** is intended to constitute a deed in lieu of foreclosure and is subject to the provisions of the following mortgage held by Grantee, and the execution, delivery and recording of this Deed shall not constitute a satisfaction, nor be deemed to satisfy, in whole or in part, any portion of the debt secured by the following mortgage, nor constitute a merger of all or any portion of the mortgage, or any rights of the Grantee thereunder, all of which are expressly reserved to the Grantee:  Mortgage and Security Agreement dated November ___, 2010 given to Grantee and recorded on November ___, 2010 with the Philadelphia County Clerk's Office as _____.

***TOGETHER*** with all and singular the improvements, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of it, the said Grantor, in law, equity, or otherwise howsoever, of, in, and to the same and every part thereof.

***TO HAVE AND TO HOLD*** the said hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, to and for the only proper use and behoof of the said Grantee, its successors and assigns forever.

***NON MERGER.*** The Grantor is conveying the property in lieu of foreclosure. Nevertheless, it is the intention of the parties hereto that the right, title and interest conveyed herein and the interests of Grantee as holder of the Mortgage shall not merge into this Deed and shall not be deemed to have been extinguished by the acceptance and recording of this Deed, but shall be and remain in full force and effect and the Grantee shall have the right to proceed to foreclosure or otherwise in accordance with the terms of such mortgage, as amended from time to time.

***AND*** the said Grantor, their heirs, executors and administrators does, by these presents, covenant, grant and agree, to and with the said Grantee, its successors and assigns, that the said Grantor, and their heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, against them, the said Grantor and their heirs, and against all and every other person and persons whomsoever lawfully claiming or to claim the same or any part thereof, shall and will,

***WARRANT and forever DEFEND.***

***IN WITNESS WHEREOF***, the said Grantor has hereunto set their hands and seals the day and year first above written.

WITNESS:

_____        _____
                                        HENRY ABRAMS

## EXHIBIT A

**Legal description for 1910 E. Hagert Street, Philadelphia, PA**

**(attached)**

COMMONWEALTH OF PENNSYLVANIA          :
                                      : ss
COUNTY OF PHILADELPHIA                :

      On this, the ____ day of _____ 2010, before me, the undersigned officer, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing instrument and acknowledged that he executed the same for the purposes therein contained.

      IN WITNESS WHEREOF, I have hereunto set my hand and official seal.


_____
Notary Public
My commission expires:

# *DEED*

### HENRY ABRAMS

- TO -

### FOX CHASE BANK

Premises:           1910 E. Hagert Street
                    Philadelphia County
                    Commonwealth of Pennsylvania


Kindly record and return to:

                    Spector Gadon & Rosen, P.C.
                    1635 Market Street, 7th Floor
                    Philadelphia, PA 19103


The address of the above-named Grantee is:

                    Fox Chase Bank
                    4390 Davisville Road
                    Hatboro, PA 19040-2544


_____

On behalf of the Grantee

337192-1

### EXHIBIT "B"

FORM OF BILL OF SALE



## GENERAL WARRANTY BILL OF SALE

**1909 E. Hagert Street**
**Philadelphia County, Pennsylvania**

THIS BILL OF SALE is made effective the ___ day of November 2010 by **HENRY ABRAMS**, an individual ("Grantor") to **FOX CHASE BANK** (hereinafter called "Grantee") (the words "Grantor" and "Grantee" to include their respective successors and assigns).

WITNESSETH that: Grantor, for and in consideration of the sum of Ten ($10.00) Dollars and other valuable consideration in hand paid to Grantor, the receipt and sufficiency whereof are hereby acknowledged, has bargained, sold and delivered and by these presents does bargain, sell and deliver unto the said Grantee, all of Grantor's right, title and interest in and to the personal property listed and described on Exhibit "B", and in and to all personal property, including sign boxes, supplies, tools, decorations, furniture, furnishings, fixtures, equipment and other tangible personal property owned by Grantor which, as of the date hereof is located on and used in connection with the management, maintenance, and operation of the real property described in Exhibit "A", attached hereto and incorporated herein by this reference, together with all rights, if any, inuring to Grantor under any warranty or guaranty of any such item. Grantor represents that it owns all of such items free of any and all liens, encumbrances, security interests and adverse claims, subject to the interests of prior lienholders, of any kind or character of any parties claiming by, through or under Grantor, and is authorized and empowered to transfer such items to Grantee without the consent of any third party.

WITNESSETH that: Grantor, for and in consideration of the sum of Ten ($10.00) Dollars and other valuable consideration in hand paid to Grantor, the receipt and sufficiency whereof are hereby

918223v3

acknowledged, as bargained, sold and delivered and by these presents does bargain, sell and deliver unto Grantee, all of Grantor's right, title and interest in and to all intangible property, listed and described on Exhibit "C", and in and to all intangible property, including contract rights, general intangibles, agreements, commitments, insurance policies, choses in action, and all assignable licenses, permits and permissions, whether owned now or acquired later, relating to the real property described in Exhibit "A" or the personal property described in Exhibit "B", attached hereto and incorporated herein by this reference, which Grantor has title or license to use.  Grantor represents that it owns all of such items free of any and all liens, encumbrances, security interests and adverse claims, subject to the interests of prior lienholders, of any kind or character of any parties claiming by, through or under Grantor, and is authorized and empowered to transfer such items to Grantee without the consent of any third party.  Grantee shall have the unconditional right to assign any and all of its interest under this General Warranty Bill of Sale.

TO HAVE AND TO HOLD the said personal property and other items unto the said Grantee, its successors and assigns, to its use, benefit and behoof forever.

918223v3

**IN WITNESS WHEREOF,** Grantor has signed and sealed this instrument, the day and year first above written.

_____

HENRY ABRAMS

COMMONWEALTH OF PENNSYLVANIA    :
                                          : ss

COUNTY OF PHILADELPHIA               :

       On this, the ___ day of November 2010, before me, HENRY ABRAMS personally appeared, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing instrument and acknowledged that he executed the same for the purposes therein contained.

       IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

                                              _____

                                                 Notary Public

My commission expires:

Exhibit "A" - Description of Real Property
Exhibit "B" - Description of Personal Property
Exhibit "C" - Description of Intangible Property

918223v3

**SPECTOR GADON & ROSEN, P.C.**
By:  David M. Giles (I.D. No. 27477)
1635 Market Street, 7th Floor                                    **Attorney for Plaintiff**
Philadelphia, PA 19103
Phone: (215) 241-8888
Fax: (215) 241-8844
Email: dgiles@lawsgr.com

| | |
|---|---|
| FOX CHASE BANK | COURT OF COMMON PLEAS<br>BUCKS COUNTY |
| Plaintiff, | OCTOBER TERM, 2010 |
| v. | |
| DAVID M. TWER | NO. 2010-10611 |
| Defendant. | |

### PRAECIPE TO VACATE JUDGMENT

To the Prothonotary:

Pursuant to the agreement of the Plaintiff, Fox Chase Bank, and Defendant, David M. Twer,

in the above captioned matter, kindly vacate the confessed judgment entered in the amount of

$2,331,408.43 on October 13, 2010 which was reassessed to $1,000,000.00 on October 20, 2010

against David M. Twer.

SPECTOR GADON & ROSEN, P.C.

By: _____
David M. Giles, Attorney for Plaintiff

918629-1

**SPECTOR GADON & ROSEN, P.C.**
By: David M. Giles (I.D. No. 27477)
1635 Market Street, 7th Floor
Philadelphia, PA 19103
Phone: (215) 241-8888
Fax: (215) 241-8844
Email: dgiles@lawsgr.com

**Attorney for Plaintiff**

---

FOX CHASE BANK                    : COURT OF COMMON PLEAS
                                  : BUCKS COUNTY
                                  :
            Plaintiff,            :
                                  : OCTOBER TERM, 2010
       v.                         :
                                  :
BETH ANNE ABRAMS                  : NO. 2010-10610
                                  :
                                  :
            Defendant.            :

---

## PRAECIPE TO VACATE JUDGMENT

To the Prothonotary:

Pursuant to the agreement of the Plaintiff, Fox Chase Bank, and Defendant, Beth Anne Abrams, in the above captioned matter, kindly vacate the confessed judgment entered in the amount of $2,331,408.43 on October 13, 2010 which was reassessed to $1,000,000.00 on October 20, 2010 against Beth Anne Abrams.

SPECTOR GADON & ROSEN, P.C.

By: _____
    David M. Giles, Attorney for Plaintiff

918968-1

**SPECTOR GADON & ROSEN, P.C.**
By:  David M. Giles (I.D. No. 27477)
1635 Market Street, 7th Floor                    **Attorney for Plaintiff**
Philadelphia, PA 19103
Phone: (215) 241-8888
Fax: (215) 241-8844
Email: dgiles@lawsgr.com

| | |
|---|---|
| FOX CHASE BANK | COURT OF COMMON PLEAS |
| | BUCKS COUNTY |
| Plaintiff, | |
| | OCTOBER TERM, 2010 |
| v. | |
| MINDY TWER | NO. 2010-10613 |
| Defendant. | |

## PRAECIPE TO VACATE JUDGMENT

To the Prothonotary:

Pursuant to the agreement of the Plaintiff, Fox Chase Bank, and Defendant, Mindy Twer, in the above captioned matter, kindly vacate the confessed judgment entered in the amount of $2,331,408.43 on October 13, 2010 against Mindy Twer.

SPECTOR GADON & ROSEN, P.C.


By: _____
David M. Giles, Attorney for Plaintiff

918972-1

**SPECTOR GADON & ROSEN, P.C.**
By:  David M. Giles (I.D. No. 27477)          **Attorney for Plaintiff**
1635 Market Street, 7th Floor
Philadelphia, PA 19103
Phone: (215) 241-8888
Fax: (215) 241-8844
Email: dgiles@lawsgr.com

| | | |
|---|---|---|
| FOX CHASE BANK | : | COURT OF COMMON PLEAS |
| | : | BUCKS COUNTY |
| Plaintiff, | : | |
| | : | OCTOBER TERM, 2010 |
| v. | : | |
| | : | NO. 2010-10606 |
| HOWARD ABRAMS | : | |
| | : | |
| Defendant. | : | |

## PRAECIPE TO VACATE JUDGMENT

To the Prothonotary:

     Pursuant to the agreement of the Plaintiff, Fox Chase Bank, and Defendant, Howard Abrams,

in the above captioned matter, kindly vacate the confessed judgment entered in the amount of

$2,331,408.43 on October 13, 2010 against Howard Abrams.

                                 **SPECTOR GADON & ROSEN, P.C.**

                                 By: _____
                                     David M. Giles, Attorney for Plaintiff

918976-1

**SPECTOR GADON & ROSEN, P.C.**
By:  David M. Giles (I.D. No. 27477)
1635 Market Street, 7th Floor                    **Attorney for Plaintiff**
Philadelphia, PA 19103
Phone: (215) 241-8888
Fax: (215) 241-8844
Email: dgiles@lawsgr.com

---

FOX CHASE BANK

                    Plaintiff,

      v.

HENRY ABRAMS

                  Defendant.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

OCTOBER TERM, 2010

NO. 001308

---

## PRAECIPE TO VACATE JUDGMENT

To the Prothonotary:

      Pursuant to the agreement of the Plaintiff, Fox Chase Bank, and Defendant, Henry Abrams,

in the above captioned matter, kindly vacate the confessed judgment entered in the amount of

$2,331,408.43 on October 12, 2010 against Henry Abrams.

                             **SPECTOR GADON & ROSEN, P.C.**

                             By: _____
                                 David M. Giles, Attorney for Plaintiff

SPECTOR GADON & ROSEN, P.C.
By: David M. Giles (I.D. No. 27477)
1635 Market Street, 7th Floor
Philadelphia, PA 19103
Phone: (215) 241-8888
Fax: (215) 241-8844
Email: dgiles@lawsgr.com                                    **Attorney for Plaintiff**

---

|                              |   |                                |
|------------------------------|---|--------------------------------|
| FOX CHASE BANK               | : | COURT OF COMMON PLEAS          |
|                              | : | PHILADELPHIA COUNTY            |
|                              | : |                                |
| Plaintiff,                   | : |                                |
|                              | : | OCTOBER TERM, 2010             |
| v.                           | : |                                |
|                              | : |                                |
| CITY ALUMINUM COMPANY, INC.  | : | NO. 001324                     |
|                              | : |                                |
|                              | : |                                |
| Defendant.                   | : |                                |

---

## PRAECIPE TO VACATE JUDGMENT

To the Prothonotary:

Pursuant to the agreement of the Plaintiff, Fox Chase Bank, and Defendant, City Aluminum

Company, Inc., in the above captioned matter, kindly vacate the confessed judgment entered in the

amount of $2,331,408.43 on October 12, 2010 against City Aluminum Company, Inc..

SPECTOR GADON & ROSEN, P.C.

By: _____
     David M. Giles, Attorney for Plaintiff

918985-1

## EXHIBIT "D"

STIPULATION



**SPECTOR GADON & ROSEN, P.C.**
By:  David M. Giles (I.D. No. 27477)
1635 Market Street, 7ᵗʰ Floor                        **Attorney for Plaintiff**
Philadelphia, PA 19103
Phone: (215) 241-8888
Fax: (215) 241-8844
Email: dgiles@lawsgr.com

| | | |
|---|---|---|
| FOX CHASE BANK | : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| | : | |
| Plaintiff, | : | |
| | : | OCTOBER TERM, 2010 |
| v. | : | |
| | : | |
| HENRY ABRAMS | : | NO. 001308 |
| | : | |
| Defendant. | : | |

## STIPULATION AS TO LIABILITY IN THIS MORTGAGE FORECLOSURE ACTION

1.     This is an action in mortgage foreclosure against Defendant brought by Plaintiff to foreclose upon a Mortgage dated May 30, 2007 (the "Mortgage") for the land, buildings, and other improvements commonly known as 1909 E. Hagert Street, Philadelphia County, Pennsylvania, as is more fully described in schedule "A" attached to the Mortgage.  The Mortgage was recorded on May 31, 2007 with the Philadelphia County Recorder of Deeds Office as Instrument No. 51703095.

2.     The Defendant does not have any defense to the action in mortgage foreclosure and agrees that a judgment as to liability is hereby entered against Defendant.

3.     Final judgment in mortgage foreclosure shall be entered in an amount to be determined by this Court, at a later date either pursuant to a further stipulation as to the amount

925194-1

of the judgment in mortgage foreclosure, or pursuant to further order of the court upon request of either Plaintiff or Defendant for a hearing to determine the amount of the judgment in mortgage foreclosure.  Upon the entry of such judgment in mortgage foreclosure, Plaintiff and defendant hereby consent and agree that the lands, buildings and other improvements as is more fully described in Exhibit "A" attached to the Mortgage (the "Mortgaged Premises") be sold according to law to satisfy the aforementioned amounts due Plaintiff under the Mortgage, and Defendant, Henry Abrams, shall be foreclosed and barred of all equity of redemption in and to all of the Mortgaged Premises that shall be sold.

4.      Upon the entry of such Judgment, Plaintiff shall be entitled to possession of the Mortgaged Premises and the collection of all rents due under all leases related to the Mortgaged Premises.

5.      Plaintiff and Defendant further agree that the personal property and other property subject to the lien of the First Mortgage shall be sold at a public sale according to law to satisfy the amounts due Plaintiff under the foreclosure documents and Defendant, Henry Abrams, shall be foreclosed and barred of all equity of redemption in and to such personal property and other properties to be sold.

_____
David M. Giles, Attorney for Plaintiff

_____
_____, Attorney for Defendant

2

925194-1

Based upon the foregoing, this Stipulation is hereby entered as an order of this Court.

**BY THE COURT:**

_____

925194-1

## EXHIBIT "E"

FORM OF MORTGAGE



Prepared By:

     David M. Giles
     Spector Gadon & Rosen, P.C.
     1635 Market Street, 7th Floor
     Philadelphia, PA  19103

Record and Return to:

     Spector Gadon & Rosen, P.C.
     1635 Market Street, 7th Floor
     Philadelphia, PA  19103
     Attn: David M. Giles

## MORTGAGE AND SECURITY AGREEMENT

**THIS MORTGAGE AND SECURITY AGREEMENT** ("**Mortgage**") is made as of this _____ day of November 2010, by **HENRY ABRAMS**, an individual ("**Mortgagor**"), in favor of **FOX CHASE BANK** ("**Mortgagee**").

### BACKGROUND

A.     On or about May 30, 2007, Mortgagor granted to Mortgagee a first priority Mortgage and Security Agreement secured by real property located at 1909 E. Hagert Street, Philadelphia, PA in connection with a $2,250,000 loan ("**Loan 1**").

B.     On or about November 7, 2007, Mortgagee extended a loan to City Aluminum Corporation, a Pennsylvania corporation ("**City**") in the principal amount of $250,000.00 (the "**Loan 2**").

C.     City, Mortgagor and the guarantors of Loan 1 and Loan 2 (collectively, the "**Obligors**") have agreed to modify Loan 1 and Loan 2 in accordance with the terms set forth in that certain Modification Agreement, Forbearance Agreement and Deed in Lieu of Foreclosure Agreement dated as of _____, 2010 among Obligors and Mortgagee (the "**Modification Agreement**").  The Modification Agreement, this Mortgage and all other documents executed and delivered in connection with or collateral to Loan 1, Loan 2 or any of the foregoing, as any of the same may be amended, modified, supplemented, extended and/or renewed from time to time, are sometimes referred to collectively as the "**Loan Documents**", and the terms and conditions thereof are incorporated herein by reference as though set forth herein in full.

D.     In accordance with the terms set forth in the Modification Agreement, Mortgagor is required to provide Mortgagee with additional security by granting a first priority mortgage lien against the Mortgaged Property (as hereinafter defined) by executing and delivering this Mortgage in favor of Mortgagee.

E.     References to defined terms in this Mortgage may be found in **Section 36** hereof.  All capitalized terms used herein which are not otherwise defined shall have the meanings given to them in the Modification Agreement or the other Loan Documents.

927356v1

**NOW, THEREFORE,** Mortgagor, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, agrees as follows:

1.     <u>Granting Clause.</u>  As security for the Secured Indebtedness, Mortgagor mortgages, transfers, assigns, pledges, grants, bargains, sells, conveys, aliens, releases and confirms unto Mortgagee a first priority interest in all that certain lot or parcel of ground located at 1910 E. Hagert Street in Philadelphia County, Commonwealth of Pennsylvania, as more fully described in **<u>Exhibit "A"</u>** attached hereto (the **"Premises"**), together with all present and future:

(a)     buildings and improvements erected thereon, and alterations, additions and improvements thereto and all cash and non-cash proceeds thereof (collectively, the **"Improvements"**);

(b)     easements, rights of way, streets, alleys, passage ways, water, water courses, mineral rights, rights, liberties, privileges, hereditaments and the appurtenances belonging or in any way appertaining thereto (collectively, the **"Appurtenances"**);

(c)     reversions, remainders, rents, income, proceeds, issues, profits, fees, payments, grants, franchises, rights, concessions and operating privileges derived from or received in connection with all purposes for which the Premises and Improvements might be employed and all cash and non-cash proceeds thereof (collectively, the **"Rents"**);

(d)     building materials, machinery, apparatus, equipment, fittings, furniture, fixtures and articles of personal property located on, about, under or in the Premises or the Improvements, without regard to whether the same may be affixed to the Premises or Improvements, and used or usable in connection with any present or future operation of the Improvements, including but not limited to all heating, electrical, air conditioning, ventilating, lighting, laundry, incinerating and power equipment, computers, computer equipment and all other property incidental thereto, engines, pipes, pumps, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire prevention, fire extinguishing, communications apparatus, appliances, furnishings, carpeting, cabinets, partitions, ducts and compressors and all parts and accessories therefor and all substitutions and replacements thereof, and the cash and non-cash proceeds of all of the foregoing, including but not limited to the proceeds of any policy or policies of insurance thereon (collectively, the **"Building Equipment"**);

(e)     awards, decrees, condemnation or other proceeds and settlements made to or for the benefit of Mortgagor by reason of any damage to, destruction of or taking of the Premises or any part thereof or any Improvements or any Building Equipment, whether such award shall be made by reason of the exercise of the right of eminent domain or otherwise, or by any public or private authority, tribunal, corporation or other entity or by any natural person and all cash and non-cash proceeds thereof (collectively, the **"Awards"**); and

(f)     contracts, licenses, permits, approvals, registration, product and manufacturer warranties, guarantees and service agreements, including all manuals, policies, instructions and other documents in connection with the same in favor of Mortgagor or by and between Mortgagor and any and all boards, agencies, departments, governmental or other parties of any kind, relating, directly or indirectly to the Premises, Building Equipment, Improvements, Appurtenances, Rents or Awards and all cash and non-cash proceeds thereof (collectively, the **"Licenses"**).

- 2 -

Mortgagee and its successors and assigns shall have and hold the Premises with the Improvements, Appurtenances, Rents, Building Equipment, Awards, Licenses and all other property hereby mortgaged, with all appurtenances thereto forever. All of the property of whatever kind described in or covered by this Mortgage may be hereinafter referred to collectively as the **"Mortgaged Property"**.

2.      **Defeasance**.  Mortgagee agrees that if Obligors shall promptly pay or cause to be paid to Mortgagee the Secured Indebtedness, and shall perform or cause to be performed all the other terms, conditions, agreements and provisions contained in the Loan Documents, all without fraud or delay or deduction or abatement of anything or for any reason and Mortgagee shall no longer have any obligation, agreement or commitment to advance any sums to Obligors, then this Mortgage and the estate hereby granted shall cease, terminate and become void.

3.      **Obligations Secured**.  This Mortgage secures the full and timely payment and performance of:

(a)      any and all obligations of Obligors to Mortgagee whether now or hereinafter owing or existing, including, without limitation, all obligations under the Loan Documents and the full and timely payment, performance and discharge of all other obligations or undertaking now or hereafter made by or for the benefit of Obligors; and

(b)      any and all (i) obligations, costs or expenses assumed or incurred by Mortgagee in connection with any of the Secured Indebtedness; and (ii) all advances Mortgagee may make to pay toward all or part of the cost of completing any erection, construction, alteration or repair of any part of the Mortgaged Property.

All of the obligations, indebtedness and undertakings described in this **Section 3** may be referred to collectively as the **"Secured Indebtedness"**.

4.      **Default Rate**.  As used herein, the term **"Default Rate"** shall have the meaning given to the term "Loan 1 Default Rate" in the Modification Agreement.

5.      **Warranty of Title**.  Mortgagor represents that (a) Mortgagor lawfully holds indefeasible fee simple title to the Mortgaged Property, free of any liens, claims, encumbrances and/or restrictions; (b) this Mortgage creates a valid and enforceable first priority lien against and security interest in the Mortgaged Property subject only to the aforesaid title exceptions (if any); and (c) Mortgagee, subject to Mortgagor's right of possession prior to an Event of Default, shall quietly enjoy and possess the Mortgaged Property.  Mortgagor covenants to preserve such title and the validity and priority of the lien and security interest hereof and shall forever warrant and defend the same unto Mortgagee against the claims of all persons and parties whatsoever.

6.      **Security Agreement**.  This Mortgage constitutes a security agreement under the Uniform Commercial Code as adopted and existing from time to time in the Commonwealth of Pennsylvania (the **"Code"**).  Mortgagor grants to Mortgagee a security interest in and first priority lien upon all that property included within the term "Mortgaged Property" which might otherwise be deemed personal property under the Code, together with all cash and non-cash proceeds of such personal property.  Upon filing this Mortgage in the appropriate offices, this Mortgage shall also be effective as a financing statement filed as a fixture filing in such offices with respect to such personal property.

- 3 -

7.     **Payment of Secured Indebtedness.**  Mortgagor will pay, or cause to be paid, when due the Secured Indebtedness, together with interest thereon, at the times and in the manner as provided in and by the Loan Documents.

8.     **Compliance with Terms.**  Mortgagor will promptly and faithfully observe and perform, or cause to be observed and performed, all the terms, covenants and provisions contained herein and in any of the Loan Documents.

9.     **Taxes, Rents and Other Charges.**  Mortgagor will pay, prior to the time when interest or penalties commence to accrue thereon, all taxes, sewer and water rents, other claims and charges, including charges in lieu of taxes, owing to all federal, state and local agencies, boards, bureaus and departments (collectively the **"Governmental Authority"**).  Within thirty (30) days after the payment of each of the foregoing, Mortgagor will produce to Mortgagee receipts or other satisfactory evidence of such payment.

10.    **Insurance.**  If any Improvements are constructed on the Mortgaged Property, Mortgagor will carry adequate insurance issued by an insurer acceptable to Mortgagee, in amounts acceptable to Mortgagee (at least adequate to comply with any co-insurance provisions) and against all such liability and hazards as are usually carried by entities engaged in the same or a similar business similarly situated or as may be required by Mortgagee.   If any Improvements are constructed on the Mortgaged Property,  Mortgagor shall carry insurance in the full insurable value of the Mortgaged Property and cause Mortgagee to be named as insured mortgagee with respect to all real property, loss payee (with a lender's loss payable endorsement) with respect to all personal property, and additional insured with respect to all liability insurance, as its interests may appear, with thirty (30) days' notice to be given Mortgagee by the insurance carrier prior to cancellation or material modification of such insurance coverage.

Mortgagor shall cause to be delivered to Mortgagee the insurance policies therefor and at least thirty (30) days prior to the expiration of any such insurance, additional policies or duplicates thereof evidencing the renewal of such insurance and payment of the premiums therefor.  Mortgagor shall direct all insurers that in the event of any loss thereunder or the cancellation of any insurance policy, the insurers shall make payments for such loss and pay all returned or unearned premiums directly to Mortgagee and not to Mortgagor and Mortgagee jointly.

In the event of any loss, Mortgagor will give Mortgagee immediate notice thereof and Mortgagee may make proof of loss whether the same is done by Mortgagor.  Mortgagee is granted a power of attorney by Mortgagor with full power of substitution to file any proof of loss in Mortgagor's or Mortgagee's name, to endorse Mortgagor's name on any check, draft or other instrument evidencing insurance proceeds, and to take any action or sign any document to pursue any insurance loss claim.  Such power being coupled with an interest is irrevocable.

In the event of any loss, Mortgagee, at its option, may (a) retain and apply all or any part of the insurance proceeds to reduce, in such order and amounts as Mortgagee may elect, the Secured Indebtedness, or (b) disburse all or any part of such insurance proceeds to or for the benefit of Mortgagor for the purpose of repairing or replacing the Mortgaged Property after receiving proof satisfactory to Mortgagee of such repair or replacement, in either case without waiving or impairing the Secured Indebtedness or any provision of this Mortgage.  Any deficiency thereon shall be paid by Mortgagor and/or City to Mortgagee upon demand.  Mortgagor shall not take out any insurance

- 4

without having Mortgagee named as loss payee or additional insured thereon. Mortgagor shall bear the full risk of loss from any loss of any nature whatsoever with respect to the Mortgaged Property.

In the event of foreclosure of this Mortgage or other transfer of title to the Mortgaged Property in extinguishment of all or any part of the Secured Indebtedness, all right, title and interest of Mortgagor to any insurance policies then in force covering the Mortgaged Property shall pass to the transferee of the Mortgaged Property.

11.    **Maintenance of Mortgaged Property.**  Mortgagor (a) shall maintain the Mortgaged Property in good repair and order; (b) shall not remove from the Premises or Improvements, any Building Equipment or any other property of any nature covered by the lien or security interest granted by this Mortgage, unless such Building Equipment is replaced with comparable Building Equipment of equal or greater value acceptable to Mortgagee; (c) shall not make, install or permit to be made or installed any alterations, additions or improvements of any nature to or in the Mortgaged Property that negatively affect the value of the Mortgaged Property or are structural in nature without obtaining the prior written consent of Mortgagee and without obtaining insurance thereon; and (d) shall not commit or suffer any waste of the Mortgaged Property or make any change in the use thereof which will in any way increase the risk of fire or other hazard or that may impair the security of this Mortgage.

12.    **Declaration of Amount Due and No Set-Off.**  Mortgagor shall, within five (5) days after request in person or ten (10) days after request by mail, furnish, or cause to be furnished, a written statement or declaration, duly acknowledged, of the amount due under the Loan Documents and whether any offsets or defenses exist thereto or against this Mortgage.

13.    **Compliance with Laws.**  Mortgagor shall comply with all laws, ordinances, regulations, agreements, covenants, conditions, contracts, declarations, easements, licenses and restrictions affecting the Mortgaged Property, or any part thereof and will not suffer or permit any violation thereof.

14.    **Maintenance and Preservation of Easements.**  Mortgagor will do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances, rights of way and other interests and rights in favor of, or constituting any portion of, the Mortgaged Property.

15.    **Other Liens.**  Mortgagor will not create, incur, assume or suffer to exist any mortgage, lien, charge, security interest or other encumbrance upon the Mortgaged Property, or any part thereof, other than the liens and security interests created hereby, liens and security interests in favor of Mortgagee and the liens approved herein (if any), or in the Loan Documents, without the prior written consent of Mortgagee, which consent Mortgagee may withhold in its sole discretion.

16.    **Condemnation.**  Mortgagor shall notify Mortgagee promptly upon receiving any notice of commencement of any proceedings for the condemnation or other taking of any or all of the Mortgaged Property and shall permit Mortgagee to participate in such proceedings and to receive all proceeds payable to Mortgagor as an award or in settlement, up to the amount of the Secured Indebtedness.  Mortgagor hereby appoints Mortgagee attorney-in-fact for Mortgagor (which appointment, being coupled with an interest, shall be irrevocable) (a) to collect and receive any such awards, damages, payments and compensation from the authorities making the same, (b) to give receipts and acquittances therefor and (c) to institute, appear in and prosecute any proceeding

- 5 -

927356v1

therefor in the event Mortgagor fails to take such action. All sums collected by or paid to Mortgagee, net of any costs, including attorney's fees, incurred by Mortgagee in collecting the same may be (i) applied by Mortgagee, in such order of priority as Mortgagee shall determine, to the Secured Indebtedness, whether or not then due and payable, or (ii) paid or made available by Mortgagee to Mortgagor, on such terms as Mortgagee may specify, without Mortgagee thereby waiving or impairing any equity or lien, under and by virtue of this Mortgage, as a result of any such taking, alteration of grade or other injury to or decrease in value of the Mortgaged Property. If, prior to the receipt by Mortgagee of said sums, the Mortgaged Property shall have been sold on foreclosure of this Mortgage, Mortgagee shall have the right, whether or not a deficiency judgment on the Secured Indebtedness shall have been sought, recovered or denied, to receive said sums to the extent of the Secured Indebtedness remaining unsatisfied after such sale, with interest thereon at the Default Rate and to receive costs and expenses, disbursements, including attorney's fees, incurred by Mortgagee in connection with the collection of said sums.

17. **Leases; Agreements of Sale.** Mortgagor shall not lease or permit anyone else to lease any portion of the Mortgaged Property without the prior consent of Mortgagee if such lease is for (A) twenty percent (20%) or more of the square footage of the Mortgaged Property and (B) the proposed rental rate is less than fair market value. Mortgagee shall not in any way assume or will be deemed to have assumed any of the obligations as landlord under any leases or as seller under any agreements of sale. Mortgagor shall perform (or cause to be performed) every obligation of the lessor or seller, as the case may be, and shall enforce every obligation of the lessee or buyer, as the case may be, in every lease or agreement of sale or any tenancy with respect to the Mortgaged Property. Mortgagor shall not modify, alter, waive or cancel any lease, agreement of sale or any part thereof, nor assign any such lease or any such rents. At Mortgagee's request, Mortgagor shall deliver or cause to be delivered to Mortgagee, assignments of specific leases together with subordination and/or attornment agreements and estoppel letters or certificates from any or all tenants of the Mortgaged Property, all such assignments, agreements, estoppel letters and certificates to be in such form as Mortgagee may require.

Mortgagor shall furnish to Mortgagee from time to time as requested by Mortgagee a complete list of all agreements of sale and leases for the Mortgaged Property, or any portion thereof, in such detail as may be requested by Mortgagee. Mortgagor shall deliver to Mortgagee certified copies of all agreements of sale and leases, together with copies of correspondence and memoranda between Mortgagor and purchasers or tenants or any successors thereunder setting forth the contractual arrangements between them.

18. **Right to Remedy.** In the event Mortgagor should fail to perform any of its obligations hereunder or under any of the other Loan Documents, including, without limitation, fail to (a) pay any taxes, water and sewer rents, assessments, charges, claims, costs, expenses or fees required to be paid under the terms of this Mortgage, (b) maintain insurance as required herein, or (c) make all necessary repairs to the Mortgaged Property as required herein, Mortgagee may advance sums on behalf of Mortgagor to remedy such failure, including, without limitation, payment of any taxes, water and sewer rents, assessments, charges, claims, costs, expenses, fees, insurance premiums and repairs without prejudice to the right of enforcement of the Loan Documents. Mortgagor shall immediately reimburse Mortgagee for any sums advanced by Mortgagee on Mortgagor's behalf.

19. **Sums Advanced by Mortgagee.** Any sums advanced by Mortgagee for the payment of any repairs, insurance premiums, taxes, water and sewer rents, assessments, charges, claims, costs, expenses, fees and any other sums advanced by Mortgagee in any way connected with the Mortgaged

- 6 -

Property or any of the Loan Documents shall be added to and become a part of the Secured Indebtedness, and repayment thereof, together with interest thereon at the Default Rate from the date of the respective expenditure, may be enforced by Mortgagee against Mortgagor at any time.

20.     **Stamps and Taxes.** If at any time any Governmental Authority shall require internal revenue stamps on all or any part of the Loan Documents or the Secured Indebtedness, Mortgagor shall pay for same upon demand. If Mortgagor fails to make such payment within fifteen (15) days after demand for same, Mortgagee may pay for such stamps. If any law or ordinance adopted hereafter imposes a tax on Mortgagee with respect to the Mortgaged Property, the value of Mortgagor's equity therein, the amount of the indebtedness secured hereby or this Mortgage, Mortgagee shall have the right at its election, from time to time, to give Mortgagor thirty (30) days written notice to pay the Secured Indebtedness, whereupon the Secured Indebtedness shall become immediately due, payable and collectible at the expiration of such period of thirty (30) days, without further notice or demand. However, if prior thereto, lawfully and without violation of usury laws, Mortgagor has paid any such tax in full as the same became due and payable, such notice shall be deemed to have been rescinded with respect to any right of Mortgagee hereunder arising by reason of the tax so paid.

21.     **Representations and Warranties.** Mortgagor represents and warrants that:

(a)     No notice of taking of any of the Mortgaged Property by eminent domain or condemnation has been received by Mortgagor or its agents, servants or employees and neither Mortgagor nor its agents, servants or employees has knowledge that any such taking or condemnation is contemplated.

(b)     Following an Event of Default, Mortgagor shall give Mortgagee an original executed or true copy of all of the existing leases or agreements of sale relating to the Mortgaged Property, accompanied in each case by all related documents.

(c)     All Licenses have been issued, are in full force and effect and all appeal periods applicable thereto have expired without appeal having been taken; and the current and proposed uses of the Mortgaged Property comply with all applicable zoning laws and other statutes, ordinances, rules and regulations of all governmental authorities having jurisdiction.

(d)     All Licenses are in full force and effect on the date hereof and are not subject to any defenses, set-offs or counterclaims whatsoever.

(e)     All Licenses are fully assignable and Mortgagee may exercise and enjoy all rights and powers granted herein without the necessity of obtaining any consent or approval of any other party.

(f)     None of the Mortgaged Property has been damaged by fire or other casualty which has not now been fully restored.

22.     **Notices.** In addition to any notice requirements contained elsewhere in this Mortgage or any of the other Loan Documents, Mortgagor shall notify Mortgagee of the occurrence of any of the following:

- 7 -

(a)     A fire or other casualty causing damage to any portion of the Mortgaged Property;

(b)     Receipt of notice of condemnation or intended condemnation of any portion of the Mortgaged Property;

(c)     Receipt of notice from any government or quasi-governmental authority asserting that the present or proposed development, structure, use or occupancy of the Mortgaged Property constitutes a violation of or noncompliance with any applicable law, statute, code, ordinance, rule or regulation promulgated or enforced by such authority;

(d)     Receipt of any default or acceleration notice from the holder of any lien or security interest in the Mortgaged Property;

(e)     Commencement of any litigation affecting the Mortgaged Property, Mortgagor or any guarantor of the Secured Indebtedness; or

(f)     Receipt of any default or termination notice from any tenant of the Mortgaged Property.

23.     **Events of Default.**  Each of the following shall constitute an event of default hereunder (an **"Event of Default"**):

(a)     If there shall occur an Event of Default under the Modification Agreement or under any of the other Loan Documents.

(b)     If Mortgagor shall fail to maintain and deliver to Mortgagee any and all policies of insurance herein required.

(c)     If Mortgagor shall fail to observe or perform any of the other terms, covenants or conditions of this Mortgage.

(d)     If there shall occur an event of default under any other mortgage encumbering the Premises or any document collateral thereto.

(e)     If there shall be any sale, lease, transfer or other disposal (whether voluntarily or by operation of law) of all, substantially all, or any portion of the Mortgaged Property or an interest therein without the prior written consent of Mortgagee.

(f)     If Mortgagee receives notice from any party that is intended to terminate, limit or affect in any manner the indebtedness secured by this Mortgage or the lien priority hereof.

Any Event of Default under this Mortgage shall constitute a default under any other mortgage from Mortgagor to Mortgagee, under the other Loan Documents and under any other agreement between Mortgagor and Mortgagee.

24.     **Remedies.**  Upon the occurrence of an Event of Default, at the option of Mortgagee, all of the Secured Indebtedness shall become immediately due and payable. In such event, Mortgagee may forthwith and without demand exercise any one or more of the following rights and remedies in addition to any of the rights or remedies provided herein or in any other Loan Documents or such

- 8 -

rights and remedies otherwise available to Mortgagee at law or in equity, without further stay, any law, usage or custom to the contrary notwithstanding:

(a)  Take possession of the Mortgaged Property and exercise with respect thereto all rights of a mortgagee-in-possession.

(b)  Collect all proceeds from agreements of sale with respect to the Mortgaged Property and revoke Mortgagor's license to collect all rentals from the Mortgaged Property and, after deducting all costs of collection and administration expenses, apply the net proceeds or rentals to the payment of taxes, water and sewer rents, charges and claims, insurance premiums and all other carrying charges, maintenance, repair or restoration of the Mortgaged Property, or on account and in reduction of the principal, interest or both of the Secured Indebtedness, in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect.

(c)  Institute any appropriate action or proceeding to foreclose this Mortgage and may proceed therein to judgment and execution for all sums secured by this Mortgage.

(d)  Exercise each and every right available to it as a secured party under the Uniform Commercial Code as enacted in the Commonwealth of Pennsylvania.

(e)  Exercise each and every right granted to it hereunder, under any of the other Loan Documents at law or in equity.

(f)  Exercise any and all rights and remedies of Mortgagor under the Licenses, without any interference or objection from Mortgagor.

(g)  As it deems necessary, effect new Licenses, cancel or surrender existing Licenses, alter or amend the terms of and renew existing Licenses and make concessions to any third party in connection therewith.

(h)  Have a receiver appointed to enter into possession of the Mortgaged Property to collect the earnings, revenues, rents, issues, profits and income derived therefrom and apply the same as the court may direct. Mortgagee shall be entitled to the appointment of a receiver without the necessity of proving either the inadequacy of the security or the insolvency of Mortgagor or any other person who may be legally or equitably liable to pay the Secured Indebtedness and Mortgagor and each such person shall be deemed to have waived such proof and to have consented to the appointment of such receiver.

(i)  Construct improvements upon the Mortgaged Property or cause repairs to be made to or otherwise alter any present or existing improvements thereon.

25.  **Remedies Cumulative.**  All rights and remedies hereby granted or otherwise available to Mortgagee shall be cumulative and concurrent; may be pursued singly, successively or together at Mortgagee's sole option; and may be exercised from time to time and as often as occasion therefor shall occur until the Secured Indebtedness is paid in full. Mortgagee may resort to any security it holds in such order and manner as Mortgagee sees fit and may sell at any foreclosure sale on this Mortgage the Premises, Improvements and Building Equipment in one parcel or in such parcels as Mortgagee in its sole discretion elects so to do and such foreclosure sale shall pass title to all such property.

- 9

26.    **No Release.**  No extension or indulgence granted to Mortgagor, no alteration, change or modification hereof or of any other Loan Document consented or agreed to by Mortgagee and no other act or omission of Mortgagee, including the taking of additional security or the release of any security, shall constitute a release of the lien and obligation of this Mortgage or be interposed as a defense against the enforcement of this Mortgage, except for an act of Mortgagee that constitutes an express, effective release and satisfaction of the Secured Indebtedness.

27.    **Modification.**  This Mortgage may not be changed orally or by any course of dealing between Mortgagor and Mortgagee, but only by an agreement in writing duly executed on behalf of the party against whom enforcement of any waiver, change, modification or discharge is sought.

28.    **Further Assurances.**  Mortgagor shall provide Mortgagee from time to time on request by Mortgagee with such mortgages, agreements, financing statements and additional instruments, documents or information as Mortgagee may in its discretion deem necessary or advisable to protect, perfect and/or maintain the liens and security interests in the Mortgaged Property.  Mortgagor hereby authorizes and appoints Mortgagee as Mortgagor's attorney-in-fact (which appointment, being coupled with an interest, is irrevocable) with full power of subscription, to execute on Mortgagor's behalf and file at Mortgagor's expense such mortgages, financing statements and amendments thereto, in those public offices deemed necessary or appropriate by Mortgagee to establish, maintain and protect a continuously perfected lien and security interest in the Mortgaged Property.

29.    **Communications and Notices.**  All notices, requests and other communications made or given in connection with the Loan Documents shall be in writing and, unless receipt is stated herein to be required, shall be deemed to have been validly given if delivered personally to the individual or division or department to whose attention notices to a party are to be addressed, or by private carrier, or registered or certified mail, return receipt requested, in all cases with charges prepaid, addressed as follows, until some other address (or individual or division or department for attention) shall have been designed by notice given by one party to the other:

To Mortgagor:

Henry Abrams
c/o David M. Twer, Esquire
1234 Bridgetown Pike, Suite 200
Feasterville, PA 19053

With a copy to:

David M. Twer, Esq.
1234 Bridgetown Pike, Suite 200
Feasterville, PA 19053

To Mortgagee:

Fox Chase Bank
4390 Davisville Road

- 10

Hatboro, PA 19040-2544
Attention: Jerry Holbrook


With a copy to:

Spector Gadon & Rosen, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA   19103
Attention:  David M. Giles, Esquire


30.   **Waivers.   In** connection with any proceedings under the Loan Documents, including without limitation any action by Mortgagee in replevin, foreclosure or other court process or in connection with any other action related to the Loan Documents or the transactions contemplated hereunder, Mortgagor waives:

(a)   **all errors, defects and imperfections in such proceedings;**

(b)   **all benefits under any present or future laws exempting any property, real or personal, or any part of any proceeds thereof from attachment, levy or sale under execution, or providing for any stay of execution to be issued on any judgment recovered under any of the Loan Documents or in any replevin or foreclosure proceeding, or otherwise providing for any valuation, appraisal or exemption;**

(c)   **presentment for payment, demand, notice of demand, notice of non-payment, protest and notice of protest of any of the Loan Documents, including the Note;**

(d)   **any requirement for bonds, security or sureties required by statute, court rule or otherwise; and**

(e)   **any demand for possession of the Mortgaged Property prior to commencement of any suit.**

31.   **Construction.** The use of the words "**Mortgagor**" or "**Mortgagee**" shall be deemed to include the successors and assigns of the party or parties.  If there shall be more than one Mortgagor or party constituting the Mortgagor, the obligation of each shall be joint and several.  The use of any gender shall include all genders.  The singular number shall include the plural, or the plural the singular, as the context may require.  Wherever in this Mortgage the Mortgagee's consent or approval is required or permitted, such consent or approval shall be at the sole and absolute discretion of Mortgagee.

32.   **Invalid Provisions Disregarded.**  If any term or provision of this Mortgage or the application thereof to any particular circumstances shall to any extent be invalid or unenforceable, the remainder of this Mortgage or the application of such terms or the provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby and each term and provision of this Mortgage shall be valid and be enforced to the fullest extent permitted by law.

- 11 -

927356v1

33.     **Applicable Law.**  This Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles.

34.     **Captions.**   The captions appearing in this Mortgage are inserted solely for convenience of reference and shall not constitute a part of this Mortgage, nor shall they in any way affect its meaning, construction or effect.

35.     **No Beneficiaries.**  The rights and remedies of this Mortgage shall not inure to the benefit of any third party other than the successors or assigns of Mortgagee.

36.     **Defined Terms.**  Defined terms in this Mortgage may be found in the following Paragraphs, Recitals and Sections:

  (a)     Appurtenances - Section 1(b)

  (b)     Awards - Section 1(e)

  (c)     Building Equipment - Section 1(d)

  (d)     City - Recital B

  (e)     Code - Section 6

  (f)     Default Rate - Section 4

  (g)     Event of Default - Section 23

  (h)     Governmental Authority - Section 9

  (i)     Improvements - Section 1(a)

  (j)     Licenses - Section 1(f)

  (k)     Loan 1 – Recital A

  (l)     Loan 2 - Recital B

  (m)    Loan Documents - Recital D

  (n)     Modification Agreement – Recital D

  (o)     Mortgaged Property - Section 1

  (p)     Mortgagee - First Paragraph

  (q)     Mortgage - First Paragraph

  (r)     Mortgagor - First Paragraph

  (s)     Obligors – Recital C

- 12

(t)     Premises - Section 1

(u)     Rents - Section 1(c)

(v)     Secured Indebtedness - Section 3

927356v1

**IN WITNESS WHEREOF,** the undersigned has caused this Mortgage and Security Agreement to be duly executed the day and year first above written.

**MORTGAGOR:**

_____

HENRY ABRAMS

**MORTGAGEE:**

FOX CHASE BANK

By:_____
    Name:
    Title:

The address of the within

named Mortgagee is:

    Fox Chase Bank
    4390 Davisville Road
    Hatboro, PA 19040-2544
    Attention: Jerry Holbrook

- 14

927356v1

COMMONWEALTH OF PENNSYLVANIA          :

                                                       SS.

COUNTY OF _____          :

On this, the _____ day of November 2010, before me, a Notary Public, personally appeared HENRY ABRAMS, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and he acknowledged that he executed the same for the purposes therein contained.

        IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                         _____

                                       Notary Public
                                       My commission expires:

**COMMONWEALTH OF PENNSYLVANIA**  :

               **SS.**

**COUNTY OF** _____   :


   On this, the ____ day of November 2010, before me, a Notary Public, personally appeared _____, who acknowledged himself/herself to be the _____ of FOX CHASE BANK and that he/she as such officer, being so authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the bank himself/herself as such officer.

   IN WITNESS WHEREOF, I hereunto set my hand and official seal.



          _____

          Notary Public
          My commission expires:


927356-1

## EXHIBIT "F"

FORM OF PLEDGE AGREEMENTS



## OWNERSHIP INTEREST PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT ("Agreement") is dated and made as of November __, 2010 by David M. Twer (the "Pledgor") in favor of FOX CHASE BANK, (the "Lender").

### W I T N E S S E T H :

WHEREAS, the Pledgor, the Lender, Henry Abrams, City Aluminum Corporation, a Pennsylvania corporation ("City"), Howard Abrams, Beth Anne Abrams ("B.A."), and Mindy Twer ("M.T.") are entering into that certain Modification Agreement, Forbearance Agreement and Deed In Lieu of Foreclosure Agreement dated as of the date hereof (as the same may be amended, modified, supplemented or restated from time to time, the "Forbearance Agreement"); and

WHEREAS, it is a condition of entering into the Forbearance Agreement that Pledgor assign to Lender as additional collateral for the outstanding obligations due to the Lender pursuant to Loan 1 the ownership interests (the "Ownership Interests") held by Pledgor in the following entities (collectively, the "Issuers"):

      (a)    a 49.5% limited partnership interest in 1421 Spruce Street Limited Partners, a Pennsylvania limited partnership; and

      (b)    a 48.5% limited partnership interest in Venus LP, a Pennsylvania limited partnership; and

      (c)    100 shares of stock represented by Stock Certificate No. 1 in Mighty Max Development Corp., a Pennsylvania corporation.

WHEREAS, this Agreement is given and is intended to provide additional security for the obligations owing by the Pledgor to the Lender relating to Loan 1 pursuant to the terms of that certain Guaranty and Suretyship Agreement between the Pledgor and the Lender dated May 30, 2007, as same has been or may be amended, supplemented, restated, replaced or otherwise modified from time to time, and is delivered pursuant to the Forbearance Agreement (collectively the "Obligations").

NOW, THEREFORE, in consideration of the premises and to induce the Lender to enter into the Forbearance Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Pledgor hereby, intending to be legally bound hereby, agrees with the Lender as follows:

    1.    Definitions.  Unless the context otherwise requires, all terms used but not expressly defined herein shall have the meanings given to them in the Forbearance Agreement or, if they are not defined in the Forbearance Agreement but are defined in the Uniform Commercial Code as adopted in the Commonwealth of Pennsylvania ("UCC"), they shall have the same meaning herein as in the UCC.  For purposes of this Agreement, "Event of Default" shall mean any breach of any covenant or representation set forth in this Agreement or the occurrence of an Event of Default as defined in the Forbearance Agreement.

2.   <u>Pledge of the Ownership Interests; Power of Attorney</u>.  (a) As security for the prompt payment and performance when due of the Obligations, the Pledgor hereby pledges to the Lender, and grants to the Lender a first priority perfected lien on and security interest in, the following (collectively, the "<u>Pledged Interests</u>"): (i) the Ownership Interests in the Issuers; (ii) all additional ownership interests or other securities at any time distributed or issued by the Issuers to the Pledgor; (iii) the certificates, if any, evidencing all of the Pledged Interests; (iv) all general intangibles arising from or relating to the Pledged Interests; (v) all dividends, distributions, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Interests; and (vi) all proceeds of any of the foregoing (including, without limitation, proceeds constituting any property of the types described above).  Notwithstanding the foregoing, until and unless an Event of Default occurs, the Pledgor shall be permitted to receive distributions from the Issuers provided that (i) Pledgor provides notice to the Lender of his receipt of any such distributions and (ii) such distributions are made in the ordinary course of the applicable Issuer's business and are consistent with distributions routinely made by such Issuer prior to the execution of this Agreement.  The pledge and security interest described herein shall continue in effect to secure all Obligations from time to time incurred or arising unless and until all Obligations have been indefeasibly paid and satisfied in full (unless the Lender has released such Pledged Interests pursuant to the Forbearance Agreement).  The Lender is hereby authorized to file financing statements naming the Pledgor as debtor in accordance with the UCC as adopted in Pennsylvania.  The Pledgor hereby authorizes the Lender to file all financing statements and amendments to financing statements describing the Pledged Interests in any filing office as the Lender, in its sole discretion, may determine.

(b)   The Lender shall have no obligation with respect to the Pledged Interests or any other property held or received by it hereunder except to use reasonable care in the custody thereof to the extent required by law.  The Lender shall have no obligation to sell or otherwise deal with the Pledged Interests at any time for any reason, whether or not upon request of the Pledgor, and whether or not the value of the Pledged Interests, in the opinion of the Lender or the Pledgor, is more or less than the aggregate amount of the Obligations secured hereby, and any such refusal or inaction by the Lender shall not be deemed a breach of any duty which Lender may have under law to preserve the Pledged Interests.

(c)   The Pledgor, to the full extent permitted by law, hereby constitutes and irrevocably appoints the Lender (and any officer or agent of the Lender, with full power of substitution and revocation) as the Pledgor's true and lawful attorney-in-fact, in the Pledgor's stead and in the name of the Pledgor or in the name of the Lender, to transfer, from and after the occurrence of an Event of Default, the Pledged Interests on the books of the Pledgor and the Issuers, in whole or in part, to the name of the Lender or such other person or persons as the Lender may designate and, from and after the occurrence of an Event of Default, to take all such other and further actions as the Pledgor could have taken with respect to the Pledged Interests which the Lender in its absolute discretion determines to be necessary or appropriate to accomplish the purposes of this Agreement.

(d)   The powers of attorney granted pursuant to this Agreement and all authority hereby conferred are granted and conferred solely to protect the Lender's interests in the Pledged Interests and shall not impose any duty upon the attorney-in-fact to exercise such

926327-4

powers. Such powers of attorney are coupled with an interest and shall be irrevocable prior to the payment in full of the Obligations (unless the Lender has released such Pledged Interests pursuant to the Forbearance Agreement), and shall not be terminated prior thereto or affected by any act of the Pledgor or other Persons or by operation of law.

(e)     Each Person who shall be a transferee of the beneficial ownership of any of the Pledged Interests (any such transfer being prohibited under Section 5 unless the Lender consents thereto) shall be deemed to have irrevocably appointed the Lender, with full power of substitution and revocation, as such person's true and lawful attorney-in-fact in such person's name and otherwise to do any and all acts herein permitted and to exercise any and all powers herein conferred.

3.     Rights of the Pledgor; Voting.

(a)     During the term of this Agreement, and so long as no Event of Default has occurred, the Pledgor shall have the right to vote any of the Pledged Interests in all matters except those which would contravene this Agreement, the Forbearance Agreement or any of the other Loan Documents, or which would be reasonably likely to materially reduce the value of the Pledged Interests, unless the Lender consents thereto. The Pledgor shall not suffer or permit any such action to be taken by the Issuer without the prior written approval (which approval the Lender may withhold in its reasonable discretion) of the Lender.

(b)     From and after the occurrence of an Event of Default or if any of the following may be reasonably likely to have a material effect on the value of any Issuer or the assets owned by the Issuer: (i) the Pledgor shall give the Lender at least five days prior notice of (A) any meeting of the partners, members, managers, board of directors or shareholders of any of the Issuers convened for any purpose and (B) any written consent which the Pledgor proposes to execute as a partner, member, manager, director or shareholder of any of the Issuers or which any of the representatives of the Pledgor proposes to execute as a manager, member, partner, director or shareholder of any of the Issuers, and (ii) in connection with the foregoing, the Pledgor hereby authorizes the Lender to send its agents and representatives to any such meeting of members, managers, partners, directors or shareholders of any of the Issuers that the Lender wishes to attend, and agrees to take such steps as may be necessary to confirm and effectuate such right, including, without limitation, causing the applicable Issuer to give reasonable prior written notice to the Lender of the time and place of any such meeting and the principal actions to be taken thereat. The Pledgor hereby irrevocably authorizes and instructs the Issuers to comply with any instruction received by it from the Lender in writing that (y) states that an Event of Default has occurred and (z) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from the Pledgor, and the Pledgor agrees that the Issuers shall be fully protected in so complying.

(c)     From and after the occurrence of an Event of Default, the Lender shall have the sole and exclusive right to exercise all voting rights relating to the Pledged Interests, and the Pledgor shall take all such steps as may be necessary to effectuate such rights.

4.     No Restrictions on Transfer. The Pledgor warrants and represents that there are no restrictions on the transfer of the Pledged Interests except for such restrictions imposed by

3

operation of law or that have been properly waived, that there are no options, warrants or rights pertaining to the Pledged Interests, and that the Pledgor has the right to transfer the Pledged Interests free of any Liens, preemptive rights and claims and without the consent of the creditors of the Pledgor or the consent of the Issuers (other than any other assignment to Lender), or any other Person (including any governmental agency) whatsoever. Without limiting the generality of the foregoing, the Pledged Interests are not subject to any voting, "lock-up" or similar agreement.

5.   No Transfer or Liens; Additional Securities; Release of Lien. The Pledgor agrees that it will not sell, transfer or convey any interest in, or suffer or permit any Lien to be created upon or with respect to, any of the Pledged Interests during the term of this Agreement, except to or in favor of the Lender. Except as expressly permitted under the Forbearance Agreement, the Pledgor shall not cause, suffer or permit the Issuers to issue any ownership interests, partnership interests or membership interests (or any options or warrants in respect of the Issuers' ownership interests, partnership interests or membership interests), or any other equity security, to any person.

6.   Adjustments of Ownership Interests; Payment and Application of Dividends. In the event that during the term of this Agreement any change is declared or made in the capital structure of any of the Issuers or if any other or additional ownership interest, partnership interest or membership interest of any of the Issuers is issued to the Pledgor, all new, substituted and additional ownership, partnership or membership interests or other securities issued by reason of any such change or acquisition shall immediately be deemed pledged by Pledgor to the Lender and shall be deemed to be part of the "Pledged Interests" under the terms of this Agreement in the same manner as the Ownership Interests originally pledged hereunder. Any additional shares, ownership, partnership or membership interests or other securities received by the Pledgor as a result of the Pledgor's record ownership of the Pledged Interests shall immediately be deemed pledged by the Pledgor to the Lender, to be held by the Lender as Pledged Interests hereunder or, if an Event of Default has occurred and is continuing, to be applied by the Lender against the Obligations. Upon the occurrence of an Event of Default or as otherwise limited by Section 2 of this Agreement, until such time as all Obligations have been indefeasibly paid and satisfied in full (unless the Lender has released such Pledged Interests pursuant to the Forbearance Agreement), the Pledgor will not demand, and will not be entitled to receive, any distributions or other income, interest or property in or with respect to the Pledged Interests, and if the Pledgor receives any of the same, the Pledgor shall immediately deliver same to the Lender to be applied against the outstanding Obligations.

7.   Warrants and Options. In the event that during the term of this Agreement subscription warrants or other rights or options shall be issued in connection with the Pledged Interests, all such warrants, rights and options shall forthwith be assigned to the Lender by the Pledgor, and said warrants, rights and options shall be, and, if exercised by the Pledgor, all new ownership, partnership or membership interests or other securities issued pursuant thereto shall be, pledged by the Pledgor to the Lender to be held as, and shall be deemed to be part of, the Pledged Interests under the terms of this Agreement in the same manner as the Ownership Interests originally pledged hereunder.

4

8.    Return of Pledged Interests Upon Payment or Termination.   Upon the full payment and satisfaction of all of the Obligations (unless the Lender has released such Pledged Interests pursuant to the Forbearance Agreement), the Lender shall promptly cause to be transferred to the Pledgor all of the Pledged Interests and any money, property and rights received by the Lender pursuant hereto, to the extent the Lender has not taken, sold or otherwise realized upon the same as permitted hereunder, together with all other documents reasonably required by the Pledgor to evidence termination of the pledge contemplated hereby.

9.    Events of Default; Remedies.

(a)    From and after the occurrence of any Event of Default, the Lender may exercise all rights with respect to the Pledged Interests (including, without limitation, transferring the Pledged Interests on the books of the Pledgor and the Issuers to the name of Lender or such other person or persons as the Lender may designate), the proceeds thereof, and any other property or money held by the Lender hereunder, all rights and remedies available to it under law, including, without limitation, those given, allowed or permitted to a secured party by or under the UCC, and all rights and remedies provided for herein.

(b)    Without limiting the foregoing, in the event that the Lender elects to sell or otherwise dispose of the Pledged Interests (such term including, for purposes of this Section 9, the Pledged Interests and all other securities at any time forming part of the Pledged Interests), the Lender shall have the power and right in connection with any such disposition, exercisable at its option and in its absolute discretion, to sell, assign, and deliver the whole or any part of the Pledged Interests or any additions thereto at a private or public disposition for cash, on credit or for future delivery and at such price as the Lender deems to be satisfactory (and if permitted by law, the Lender or its nominee may become the purchaser at any such disposition).  To the extent the Lender is required by law to give the Pledgor prior notice of any public or private sale, or other disposition of the Pledged Interests, the Pledgor agrees that ten (10) days prior written notice to the Pledgor shall be a commercially reasonable and sufficient notice of such sale or other intended disposition.  The Lender may, if it deems it reasonable, postpone or adjourn any disposition of the Pledged Interests from time to time by an announcement at the time and place of the sale to be so postponed or adjourned without being required to give a new notice of sale.  The Pledgor further recognizes and agrees that if the Pledged Interests, or a portion thereof, threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Pledgor shall not be entitled to any prior notice of sale or other intended disposition.  The Pledgor agrees that, in connection with any sale or other disposition of the Pledged Interests, the Lender may, at Lender's option, disclaim any and all warranties regarding the Pledged Interests and that any such disclaimer shall constitute commercially reasonable conduct on the part of Lender.

(c)    Because federal and state securities laws may restrict the methods of disposition of the Pledged Interests which are readily available to the Lender, and specifically because a public sale thereof may be impossible or impracticable by reason of certain restrictions under the Securities Act of 1933, as amended (the "Securities Act"), or under applicable Blue Sky or other state securities laws as now or hereafter in effect, the Pledgor agrees that the Lender may from time to time attempt to sell the Pledged Interests by means of a private placement restricting the offering or sale to a limited number of prospective purchasers who meet suitability

5

standards the Lender deems appropriate and who agree that they are purchasing for their own accounts for investment and not with a view to distribution. The Pledgor agrees that any such private placement may be at prices and on terms less favorable to the Lender or the seller than if sold at public sales, and therefore recognizes and confirms that such private sales shall not be deemed to have been made in a commercially unreasonable manner solely because they were made privately. The Pledgor agrees that the Lender has no obligation to delay the sale of any such securities for the period of time necessary to permit the Issuer to register such securities for public sale under the Securities Act. The Pledgor further agrees to use commercially reasonable efforts to do or cause to be done all such other acts as may be necessary to make any sale or sales of all or any portion of the Pledged Interests pursuant to this Section 9(c) valid and binding and in compliance with any and all other applicable law.

10.    Certain Representations and Warranties. The Pledgor represents and warrants (and, with respect to clause (e) below, covenants), to the Lender that:

(a)    All of the Pledged Interests are fully paid, duly and properly issued, nonassessable and owned by the Pledgor free and clear of any Liens, preemptive rights, claims and legends of any kind whatsoever, excepting those Liens herein or previously granted to the Lender.

(b)    No effective financing statement or other instrument similar in effect covering all or any part of the Pledged Interests is on file in any recording office except in favor of Lender.

(c)    The pledge of the Pledged Interests and other actions taken pursuant to this Agreement create a valid and perfected security interest in the Pledged Interests, securing the payment of the Obligations, and all filing and other actions necessary or desirable to perfect and protect such security interest have been or, concurrently herewith, will be duly made or taken.

(d)    No authorization, approval or other action by, and no notice to or filing with, any governmental authority or regulatory body (other than those which have been or, concurrently herewith, will be made) is required for (i) the pledge by the Pledgor of the Pledged Interests pursuant to this Agreement, the grant by the Pledgor of the assignment or security interest granted hereby or the execution, delivery or performance of this Agreement by the Pledgor, (ii) the perfection of the Lender's security interest in the Pledged Interests or exercise by the Lender of its rights and remedies provided for in this Agreement, or (iii) the exercise by the Lender of the voting or other rights provided for in this Agreement or the remedies in respect of the Pledged Interests pursuant to this Agreement (except as may be required in connection with the disposition of the Pledged Interests by laws affecting the offering and sale of securities generally).

(e)    The Pledgor has full right, power and authority to enter into this Agreement and to grant the security interest in the Pledged Interests made hereby, and this Agreement constitutes the legal, valid and binding obligation of the Pledgor enforceable against the Pledgor in accordance with its terms, except as the enforceability thereof may be (i) limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the

6

enforceability of creditors' rights generally, and (ii) subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

11.   Indemnity and Expenses. The Pledgor agrees, jointly and severally, to indemnify the Lender from and against any and all claims, damages, losses, liabilities and expenses incurred by the Lender arising out of, or in connection with, or resulting from, a breach by the Pledgor of any representation, warranty, covenant or agreement contained in this Agreement.

(a)     The Pledgor agrees promptly upon the Lender's demand to pay or reimburse the Lender for all reasonable expenses (including, without limitation, fees and disbursements of counsel) incurred by the Lender in connection with (i) the Lender's enforcement of remedies under this Agreement, (ii) any actual or attempted sale or exchange of, or any enforcement, collection, compromise or settlement respecting, the Pledged Interests or any other property or money held hereunder, and any other action taken by the Lender hereunder whether directly or as attorney-in-fact pursuant to the power of attorney herein conferred, (iii) the failure by the Pledgor to perform or observe any of the provisions hereof or (iv) any action taken by the Lender pursuant to this Agreement. All such expenses shall be deemed a part of the Obligations for all purposes of this Agreement and the Lender may apply the Pledged Interests or any other property or money held hereunder to payment of or reimbursement for such expenses after notice and demand to the Pledgor.

12.   Lender May Perform.  If the Pledgor fails to perform any agreement contained herein, the Lender may, but shall not be obligated to, perform, or cause performance of, such agreement, and the expenses of the Lender incurred in connection therewith shall be payable by the Pledgor on demand.

13.   Waivers and Amendment.  All rights and remedies hereunder and under the Forbearance Agreement and the other Loan Documents are cumulative and not alternative, and the Lender may proceed in any order from time to time against the Pledgor, the Borrower, the Guarantors or any other guarantor of all or any part of the Obligations and their respective assets. The Lender shall not have any obligation to proceed at any time or in any manner against, or exhaust any or all of the Lender's rights against, the Borrower, the Guarantors or any other guarantor of all or any part of the Obligations prior to proceeding against the Pledgor hereunder. No failure or delay on the part of the Lender in the exercise of any power, right or privilege shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other right, power or privilege. Any right or power of the Lender hereunder respecting the Pledged Interests and any other property or money held hereunder may at the option of the Lender be exercised as to all or any part of the same and the term the "Pledged Interests" wherever used herein, unless the context clearly requires otherwise, shall be deemed to mean (and shall be read as) "the Pledged Interests and any other property or money held hereunder or any part thereof." No amendment, modification or waiver of any provision of this Agreement, or consent to any departure by the Pledgor therefrom, shall be effective unless the same shall be in writing and signed by the Lender and the Pledgor. Each amendment, modification or waiver shall be effective only in the specific instance and for the specific purpose for which it was given.

7

14.     Continuing Security Interest; Assignments.   This Agreement shall create a continuing security interest in the Pledged Interests and shall (i) remain in full force and effect until released in accordance herewith, (ii) be binding upon the Pledgor, and the Pledgor's successors and assigns (provided that the Pledgor may not assign or delegate any of its rights or obligations under this Agreement without the Lender's prior written consent), and (iii) inure, together with the rights and remedies of the Lender hereunder, to the benefit of the Lender, its successors and assigns.  Without limiting the generality of the foregoing clause (iii), the Lender may assign or otherwise transfer all or any portion of its rights and obligations under this Agreement to any other person or entity, and such other person or entity shall thereupon become vested with all the benefits in respect hereof granted to the Lender herein; the Lender shall, however, retain all of its rights and powers with respect to any part of the Pledged Interests not transferred.  Any agent or nominee of the Lender shall have the benefit of this Agreement as if named herein and may exercise all the rights and powers given to the Lender hereunder.

15.     APPLICABLE LAW.   THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE COMMONWEALTH OF PENNSYLVANIA WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

16.     Notices.   Unless otherwise specified below, all notices hereunder shall be in writing addressed to the respective party set forth below and may be personally served or sent by overnight courier service or United States mail and shall be deemed to have been given:  (a) if delivered by nationally recognized overnight courier service, charges prepaid, return receipt requested, upon receipt or rejection; or (b) if by certified or registered U.S. Mail, with postage prepaid, return receipt requested, upon receipt or rejection.

If to the Pledgor, to:

David M. Twer, Esquire
1234 Bridgetown Pike, Suite 200
Feasterville, PA 19053

If to Lender, to:

Fox Chase Bank
4390 Davisville Road
Hatboro, PA 19040-2544
Attn: Jerry Holbrook

With a copy to:

Spector Gadon & Rosen
1635 Market Street
7th Floor
Philadelphia, PA 19103
Attn: David M. Giles, Esquire

8

926327-4

or at such other address as the party giving such notice shall have been advised of in writing for such purpose by the party to whom or to which the same is directed.

17.     CONSENT TO JURISDICTION.   The Pledgor irrevocably agrees to the exclusive jurisdiction of the federal and state courts of Pennsylvania in any and all disputes, actions or proceedings between Lender and the Pledgor whether arising hereunder or under any other Loan Documents, except as Lender may otherwise elect; and the Pledgor irrevocably agrees to service of process by certified mail, return receipt requested, to the Pledgor at the notice address listed in this Agreement.

18.     WAIVER OF JURY TRIAL.   THE PLEDGOR AND LENDER HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS.   THE PLEDGOR AND THE LENDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED FUTURE DEALINGS.   THE PLEDGOR AND THE LENDER FURTHER WARRANT AND REPRESENT THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

19.     Entire Agreement; Severability.   This Agreement, the Forbearance Agreement and the other Loan Documents represent the entire understanding and agreement between the parties with respect to the subject matter contained herein and therein, and there are no other existing agreements or understandings, whether oral or written, between or among such parties as to such subject matter.   This Agreement, the Forbearance Agreement and the other Loan Documents are intended to be complimentary of one another and shall be interpreted as such; provided, however, that in the case of an irreconcilable conflict between this Agreement, on one hand, and the Forbearance Agreement, on the other hand, the Forbearance Agreement, as applicable, shall govern and control.   Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

20.     Termination.   This Agreement shall remain in full force and effect until the date upon which the Lender shall have received payment and satisfaction in full of the Obligations (unless the Lender has released all of the Pledged Interests pursuant to the Forbearance Agreement).

21.     Headings.   Section headings used herein are for convenience only and shall not affect the meaning or construction of any of the provisions hereof.

926327-4

IN WITNESS WHEREOF, the Pledgor has executed and delivered this Agreement as of the day and year first above written.

_____
**DAVID M. TWER,** individually

926327-4

## CONSENT AND ACKNOWLEDGEMENT TO PLEDGE

The undersigned hereby (i) acknowledge all of the rights granted to the Lender under the foregoing Agreement, (ii) agree to take all actions necessary to effectuate said rights and the purposes of the Agreement including, without limitation, performance of any acts requested by the Lender pursuant to the terms thereof, (iii) consent to rights granted by the Pledgor to the Lender pursuant to the Agreement; and (iv) waive any applicable purchase options that it or they may have with respect to the Pledged Interests that are or may be triggered by the rights granted to the Lender pursuant to the Agreement. In the event that the Lender or any assignee of the Lender exercises its remedies pursuant to the Agreement or applicable law and such person becomes a partner or shareholder of the applicable entity, the undersigned hereby consent to such person becoming a partner or shareholder, as applicable, without obtaining any further consent or waivers from the undersigned.

1421 SPRUCE STREET LIMITED PARTNERS, a Pennsylvania limited partnership

By: Yenom Management Corporation, a Pennsylvania corporation, its sole general partner

By: _____

Name: David M. Twer

Title: President

VENUS LP, a Pennsylvania limited partnership

By: Yenom Management Corporation, a Pennsylvania corporation, its sole general partner

By: _____

Name: David M. Twer

Title: President

**[SIGNATURES TO THE CONSENT AND ACKNOWLEDGEMENT TO PLEDGE CONTINUE ON THE FOLLOWING PAGE]**

11

926327-4

MIGHTY MAX DEVELOPMENT CORP., a Pennsylvania corporation

By: _____

Name:  David M. Twer

Title:  President


YENOM MANAGEMENT CORPORATION, a Pennsylvania corporation

By: _____

Name:  David M. Twer

Title:  President


_____

**DAVID M. TWER**, individually in his capacity as the sole shareholder and director of Mighty Max Development Corp.


Accepted and agreed:

FOX CHASE BANK

By:      _____
Name:  _____
Title:   _____


12

926327-4

## SCHEDULE I

### EXISTING DEFAULTS

1.      Failure by Loan 1 Borrower to make the September, 2010 and October, 2010  monthly payments of principal and interest due under Loan 1.

2.      Failure by Loan 2 Borrower to pay Loan 2 in full on or before the maturity date of June 30, 2010.

3.      Material adverse change in the financial condition of any of the Loan 1 Obligors or the Loan 2 Obligors.

4.      Failure by Loan 1 Borrower and City to operate in the 1909 Mortgaged Property.

5.      Condemnation of the 1909 Mortgaged Property, to the extent that the requirement by a governmental authority to demolish the building constitutes a constructive condemnation of the 1909 Mortgaged Property.

6.      Lender deems itself or the collateral secured by Loan 1 or Loan 2 to be insecure.

7.      Failure to maintain the 1909 Mortgaged Property in good order and condition as required by Section 6.10 of the Loan 1 Loan Agreement.

8.      Failure to comply with the reporting requirements set forth in Sections 6.4, 6.5 and 6.6 of the Loan 1 Loan Agreement.

9.      Failure by Loan 1 Borrower and City to meet the debt service coverage ratio set forth in Section 6.13 of the Loan 1 Loan Agreement.

10.      Failure by City to meet the leverage ratio set forth in Section 6.14 of the Loan 1 Loan Agreement.

11.      Failure by Borrower and City to maintain the books and records as required by Section 6.15 of both the Loan 1 Loan Agreement and the Loan 2 Loan Agreement.

12.      Any change in the general character of the business of Loan 1 Borrower or City, as prohibited by Section 7.4 of both the Loan 1 Loan Agreement and the Loan 2 Loan Agreement.

13.      Any failure by Loan 1 Obligors or Loan 2 Obligors to remain solvent or pay their debts as they become due.

33

### SCHEDULE 9

VALUES FOR BUCKS COUNTY PROPERTIES



**CITY ALUM LP II**
**"BUCKS COUNTY PROPERTIES"**
**PROPOSED RELEASE AMOUNTS**

|  | Estimated Market Value | Mortgage Balance | Estimated Closing Costs | Proposed Release Amount |
|---|---|---|---|---|
| 44 Albert Street | $290,000 | $173,600 | $ 23,200 | $ 85,000 |
| 1333 Buck Road | 810,000 | 448,000 97,800 99,900 | 65,000 | 90,000 |
| 1300 Bridgetown Pike (vacant land) | 675,000 | 419,450[1] | 54,000 | 180,000 |
| 1334 Bridgetown Pike | 400,000 | 272,700 9,600 | 32,000 | 75,000 |

---

[1] Approximately $151,000 (of which $101,000 is a letter of credit to township) may be drawn for improvements directly to the land.

wpdocs:City Alum LP IIBucks Co
Prop Release Amts

## SCHEDULE 11

## AGREED VALUE OF PLEDGED OWNERSHIP INTERESTS
## AND FIRST PRIORITY STOCK

|  | Pledged Interest | Release Amount | |
|---|---|---|---|
| 1. | 1421 Spruce Street Limited Partnership Interest (49.5%) | $175,000 | |
| 2. | Venus LP Limited Partnership (48.5%) | 500,000 | |
| 3. | Mighty Max Development Corp. | 35,000 | |
| 4. | City Alum LP II Limited Partnership Interest (49.5%) (49.5%) | 150,000 150,000 | DT & MT HA & BA |
| 5. | First Priority Stock (10,000 shares) | 100,000 | |

## SCHEDULE 29 (f)

## LIENS AND ENCUMBRANCES UPON BUCKS COUNTY PROPERTIES[1]

| | Address | Encumbrance |
|---|---|---|
| 1. | 44 Albert Street | First Cornerstone Bank, Mortgage |
| 2. | 1333 Buck Road | WSFS Bank, First Mortgage<br>WSFS Bank, Second Mortgage<br>WSFS Bank, Third Mortgage |
| 3. | 1300 Bridgetown Pike | East River Bank, Mortgage |
| 4. | 1334 Bridgetown Pike | Republic Bank, First Mortgage<br>W. Kenneth Williams, Second Mortgage |

---

[1] There are currently leases on all Properties except 1300 Bridgetown Pike.

## SCHEDULE 29(j)

SCHEDULE OF PLEDGED OWNERSHIP INTERESTS

| ENTITY | OWNER | PERCENTAGE INTEREST |
|---|---|---|
| Venus LP | D.T. | 48.5% |
| 1421 Spruce | D.T. | 49.5% |
| Alum II | H.A. and B.A. | 45% |
| Alum II | D.T. and M.T. | 45% |
| Alum II | Mighty Max | 10% |
| Mighty Max | D.T. | 10% |